**TEAMSTERS FOR A DEMOCRATIC UNION, et al., Plaintiffs,**

v.

**SECRETARY OF LABOR, et al., Defendants.**

**Civ. A. No. 85–3511.**

United States District Court, District of Columbia.

March 6, 1986.

Arthur L. Fox, II, Washington, D.C., for plaintiffs.

Dennis Linden and Jeffrey Paulsen, U.S. Dept. of Justice, Washington, D.C., for defendant Secretary of Labor.

Gary S. Witlen, Washington, D.C., for intervenor Intern. Broth. of Teamsters.

## MEMORANDUM

GASCH, Senior District Judge.

This case challenges the Secretary of Labor's interpretation of the Labor-Management Reporting and Disclosure Act ("Act"), 29 U.S.C. §§ 401–531 (1982). Plaintiffs assert that the Secretary has incorrectly interpreted the provision of Title IV of the Act governing the election of officers of national and international unions. See Act § 401(a), 29 U.S.C. § 481(a) (1982). Plaintiffs seek declarations that the Secretary of Labor's current interpretation is contrary to the Act and that the Secretary has the statutory authority to issue a new regulation requiring unions to utilize different voting procedures.

Currently before the Court are three motions. Plaintiffs move for summary judgment. The Secretary of Labor and the International Brotherhood of Teamsters ("Teamsters"), an intervenor, move for dismissal.

## I. BACKGROUND

The Act was enacted in 1959 in response to congressional investigations of labor-management relations that disclosed numerous "instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct." Act § 2(b), 29 U.S.C. § 401(b) (1982). A "pervading premise" of the Act was that these abuses could be prevented by "full and active participation by the rank and file in the affairs of the union." American Federation of Musicians v. Wittstein, 379 U.S. 171, 182–83, 85 S.Ct. 300, 307, 13 L.Ed.2d 214 (1964).

To that end, Congress set certain standards to govern election of union officials in Title IV of the Act. All local labor organizations must elect their officers "not less often than once every three years by secret ballot among the members in good standing." Act § 401(b), 29 U.S.C. § 481(b)

(1982). Intermediate union bodies must elect officers "not less often than once every four years by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot." *Id.* § 401(d). Finally, international and national unions must elect their officers "not less often than once every five years either by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot." *Id.* § 401(a). The latter provision is the focus of this case.

The Secretary of Labor has construed section 401(a) of the Act as follows:

> Officers of labor organizations who have been elected by secret ballot vote of their respective memberships may, by virtue of their election to office, serve as delegates to conventions at which officers will be elected, if the constitution and bylaws of the labor organization so provide.

29 C.F.R. § 452.120 (1985). Thus, in the Secretary's view the law does not require special elections for delegates to national conventions. Rather, a union may provide that local union officials elected by secret ballot will automatically serve as delegates to national conventions. The Secretary's interpretation was first made soon after the Act became law and has remained unchanged for twenty-five years.[1]

Many unions either directly elect their national officers by secret ballot or hold special elections in which all delegates for their national conventions are elected by secret ballot. Other unions, including the Teamsters, use a different procedure. The Teamsters' constitution provides that local officers and business agents who have been elected by secret ballot shall serve as delegates to any national convention held during their term of office. Because of the staggered terms of local officers, election of those officers who become *ex officio* delegates occurs between six and twenty-nine months prior to the national convention. If a local chapter is entitled to more delegates, those delegates are selected by secret ballot elections held between ninety and thirty days before the convention. The Teamsters have used this method of selection since 1961.

The legality of 29 C.F.R. § 452.120 was first challenged in January, 1981, when several Teamsters members asked the Secretary to require special delegate elections before the Teamsters' 1981 national convention. The Secretary declined to do so. While he found special elections to be "a worthy concept," the Secretary concluded: "[A]s desirable as this may be for members, the Act does not prescribe when delegate elections should be conducted. Nor does the Act prohibit local officers from serving as *ex officio* delegates to an international convention."[2]

On August 9, 1985, plaintiffs herein filed a petition asking the Secretary to formally rescind 29 C.F.R. § 452.120 and to promulgate a new interpretation requiring special delegate elections to be held within a specified time prior to national conventions. The Secretary refused, reaffirming his 1981 position and noting that the "policy set forth in 29 C.F.R. § 452.120 is not inconsistent with the provisions of the Act" because section 401(a) of the Act "requires only that the delegates be elected by secret ballot."

Plaintiffs responded by filing the instant action on November 4, 1985. They allege that 29 C.F.R. § 452.120 undermines the Act's purpose of promoting union democracy because local officials often are elected well in advance of national conventions,

---

1. The interpretation was first made in 1960 in response to an inquiry from the Communication Workers of America. A similar interpretation was provided the Teamsters in 1966. These interpretations were restated and published in the Federal Register in 1973, *see* 39 Fed.Reg. 18323, 18337 (July 9, 1973), and then were codified in the Code of Federal Regulations.

2. The Teamsters members who objected to 29 C.F.R. § 452.120 did not challenge the outcome of the 1981 convention in court, although the Act does provide a mechanism whereby disgruntled union members may challenge elections which they believe are illegal. *See* 29 U.S.C. § 482 (1982). This mechanism will be discussed in greater detail *infra*.

before the issues to be addressed in those conventions have surfaced. In addition, they contend that union members voting for local officers usually make their decision solely upon the candidates' positions on issues of purely local concern. As such, the Teamsters' delegate selection process allegedly has the effect of muting members' voices on issues of national significance because the *ex officio* delegates are not accountable to the union rank and file for their positions on national union issues.

Resolution of the plaintiffs' claims has some immediacy, because the Teamsters are preparing for their 1986 convention, which is scheduled to commence on May 19, 1986.

## II. DISCUSSION

■ The parties have raised a number of issues, both as to justiciability and on the merits of plaintiffs' claims. The Court need not reach the merits, however, since it concludes that it lacks subject-matter jurisdiction over the case because Congress intended to preclude pre-election judicial review at the instigation of union members.[3]

■ Under the Administrative Procedure Act, an aggrieved party has no cause of action to challenge an administrative action if the authorizing Act "preclude[s] judicial review" of that action. 5 U.S.C. § 701(a)(1) (1982). There is a presumption in favor of judicial review, but that presumption may be overcome "whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" *Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 2457, 81

L.Ed.2d 270 (1984) (quoting *Data Processing Service v. Camp,* 397 U.S. 150, 157, 90 S.Ct. 827, 831–32, 25 L.Ed.2d 184 (1970)). The Supreme Court recently noted,

> Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.... Therefore, we must examine this statutory scheme "to determine whether Congress precluded all judicial review, and, if not, whether Congress nevertheless foreclosed review to the class to which the [respondents] belon[g]."

*Id.* at 2454 (quoting *Barlow v. Collins,* 397 U.S. 159, 173, 90 S.Ct. 832, 841–42, 25 L.Ed.2d 192 (1970) (opinion of Brennan, J.)). Under this standard, courts have found preclusion of judicial review in a number of cases.[4]

The question for this Court therefore is whether Congress intended to foreclose pre-election review of the Secretary's interpretation of Section 401(a) in suits brought by union members. The language and scheme of the Act, its legislative history, and its objectives all lead this Court to conclude that such preclusion was intended.

### A. *Language and Structure of the Act*

The Act provides a mechanism for enforcement of Title IV. *See* Act § 402, 29 U.S.C. § 482 (1982). Union members who believe that a union election has violated the Act must first exhaust their internal union procedures for resolving their griev-

---

**3.** The question of subject-matter jurisdiction "'is, of necessity, the first issue for an Article III court. The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other ground.'" *Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 75 (D.C.Cir.1984) (quoting *Tuck v. Pan American Health Org.,* 668 F.2d 547, 549 (D.C. Cir.1981)). The Court thus does not address whether this case is ripe or whether plaintiffs lack standing to bring this action. *See Block v. Community Nutrition Institute,* 467 U.S. 340, 104 S.Ct. 2450, 2458 n. 4, 81 L.Ed.2d 270 (1984)

("Since congressional preclusion of judicial review is in effect jurisdictional, we need not address the standing issues....").

**4.** *See e.g., Block v. Community Nutrition Institute,* 104 S.Ct. at 2450; *Southern Ry. Co. v. Seaboard Allied Milling,* 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979); *Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); *Gott v. Walters,* 756 F.2d 902 (D.C.Cir. 1985); *Thompson v. Clark,* 741 F.2d 401 (D.C. Cir.1984); *Banzhaf v. Smith,* 737 F.2d 1167 (D.C.Cir.1984).

ances. *Id.* § 402(a). Thereafter, the members may file a complaint with the Secretary, who must investigate the claims of illegality. *Id.* Upon finding "probable cause" to believe that a violation has occurred, the Secretary must bring a civil action against the union. *Id.* § 402(b). If the reviewing court finds that violation of the Act "may have affected the outcome of an election," the court must declare the election void and direct that a new election be held under the Secretary's supervision. *Id.* § 402(c). The Act expressly declares that, "The remedy provided by this title for challenging an election already conducted shall be exclusive." *Id.* § 403.

■ If the Secretary declines to bring an enforcement action, dissatisfied union members may obtain judicial review of their grievances by challenging the Secretary's decision. *See Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). In such cases, courts are to determine whether the Secretary's statement of reasons for not bringing an action "evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Id.* at 573, 95 S.Ct. at 1860–61.

There is nothing in the Act to indicate that Congress intended to permit union members to launch pre-election challenges to the Secretary's interpretation of Title IV of the Act. Rather, the structure of the Act manifests that Congress intended to allow only post-election review of compliance and then only after the Secretary has investigated and considered the validity of a particular complaint. "The lack of any authorization for … review at the behest of [union members], when viewed in the context of the limits on review built into the statute …, strongly suggests that Congress intended no review at the behest" of union members. *Banzhaf v. Smith,* 737 F.2d 1167, 1169 (D.C.Cir.1984); *see also Block,* 104 S.Ct. at 2455.

That Congress intended to preclude pre-election review of asserted violations of Section 401(a) also is suggested by Congress' express provision for such review in section 401(c) of the Act, 29 U.S.C. § 481(c) (1982). That provision permits bona fide candidates for union office to bring pre-election suits to enforce rights to equal treatment in the distribution of campaign literature and membership lists. Congress' allowance of preelection judicial review under section 401(c), but not under section 401(a), evinces a clear intent to preclude pre-election review under section 401(a). *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is presumed that Congress acts intentionally in making the exclusion).

Finally, the Supreme Court has noted that section 402 "contains its own comprehensive administrative and judicial procedure for enforcing the standards established" in Title IV. *Local No. 82, Furniture Moving Drivers v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 2565, 81 L.Ed.2d 457 (1984). The Court has determined that section 402 " 'sets up an exclusive method for protecting Title IV rights' and that Congress 'decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV.' " *Id.* at 2565–66 (quoting *Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964)).

This case is analogous to *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), in which union members brought a pre-election suit against the union, alleging that union electoral procedures violated section 101(a)(1) of the Act. The district court dismissed the case for want of jurisdiction. *Id.* at 136, 85 S.Ct. at 294. The *Calhoon* Court upheld the dismissal, holding that "possible violations of Title IV of the Act … are not relevant in determining whether or not a district court has jurisdiction under § 102 of Title I of the Act." *Id.* at 140, 85 S.Ct. at 296. This was so because section 402 "sets up an *exclusive* method for protecting Title IV rights, by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any elec-

tion because of violations of Title IV." *Id.* (emphasis added). The district court thus lacked jurisdiction over the case, because "the Act itself shows clearly by its structure and language that the disputes here, basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title." *Id.* at 141, 85 S.Ct. at 296.

Thus, *Calhoon* establishes that section 402 is the exclusive remedy and bars assertion of jurisdiction over pre-election suits alleging Title IV violations. Plaintiffs attempt to distinguish *Calhoon* on the ground that it involved a suit directly against a union, rather than a suit challenging the Secretary's interpretation of the Act. That is a distinction without a difference. The sweeping language of *Calhoon* reveals that section 402 provides the exclusive remedy for Title IV violations, regardless of who is sued.[5]

Indeed, the Supreme Court decisions following *Calhoon* adopt a broad reading of that Court's language. In *Wirtz v. Bottle Blowers Ass'n*, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968), the Court noted that "Congress deliberately gave exclusive enforcement authority to the Secretary" and that "Congress emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* at 473, 475, 88 S.Ct. at 649, 650. The Court also has found it "most improbable that Congress deliberately settled exclusive enforcement jurisdiction on the Secretary and granted him broad investigative powers to discharge his responsi-

bilities, yet intended the shape of the enforcement action to immutably fixed by the artfulness of a layman's complaint...." *Wirtz v. Laborers' Union*, 389 U.S. 477, 482, 88 S.Ct. 639, 642, 19 L.Ed.2d 716 (1968). The Court has stated that "Congress intended to prevent members from pressing claims not thought meritorious by the Secretary, and from litigating in forums or at times different from those chosen by the Secretary." *Trbovich v. United Mine Workers*, 404 U.S. 528, 532, 92 S.Ct. 630, 633, 30 L.Ed.2d 686 (1972). *See also Dunlop v. Bachowski*, 421 U.S. at 568–70, 95 S.Ct. at 1858–59. There is simply no room in the exclusive section 402 enforcement scheme for anticipatory pre-election suits by union members.[6]

### B. *Legislative History of the Act*

The legislative history establishes that Congress specifically declined to authorize Title IV enforcement actions by individual union members. Indeed,

Congress deliberately gave exclusive enforcement authority to the Secretary, having "decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest." In so doing, Congress rejected other proposals, among them plans that would have authorized suits by complaining members in their own right.

*Wirtz v. Bottle Blowers Ass'n*, 389 U.S. at 473, 88 S.Ct. at 649 (quoting *Calhoon v. Harvey*, 379 U.S. at 140, 85 S.Ct. at 296). The conference report on the Act reveals that a House provision which would have allowed union members to bring enforce-

---

5. The Court notes that while this suit was brought against the Secretary of Labor and putatively challenges his interpretation of § 401 of the Act, the evident object of the suit is to require the Teamsters union to change its national convention delegate selection procedures. To that extent, this case is quite similar to *Calhoon*.

6. The existence of a complex administrative enforcement scheme does not necessarily compel the conclusion that other forms of judicial review are precluded. *See National Treasury Em-*

*ployees Union v. Devine*, 733 F.2d 114 (D.C.Cir. 1984); *International Ladies' Garment Workers Union v. Donovan*, 722 F.2d 795 (D.C.Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984). However, the absence of a provision permitting pre-election enforcement by union members "is sufficient reason to believe that Congress intended to foreclose" such suits when there is nothing in the statute or the legislative history to the contrary. *Block*, 104 S.Ct. at 1455.

ment actions was rejected in favor of a Senate provision which allowed enforcement actions to be brought only by the Secretary. *See* H.R.Rep. No. 1147, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad.News 2503, 2507. Thus, the conclusion that Congress intended to foreclose pre-election review by union members "is bolstered by indications in the legislative history that Congress considered and declined to include statutory language providing for review at the behest" of union members. *Banzhaf v. Smith*, 737 F.2d at 1170.

The legislative history also supports reading section 402 as the exclusive means for enforcement of Title IV. The Senate report notes one of the "three principles" that guided drafting of the Act:

Remedies for the abuses should be direct. When the law prescribes standards, sanctions for their violation should also be direct.... Still more important, the legislation should provide an administrative or judicial remedy appropriate for each specific problem.

S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S.Code Cong. & Ad. News 2318, 2323. Congress gave careful consideration to the appropriate form of judicial review for various violations of the Act. Accordingly, it is proper to infer that Congress' failure to provide for pre-election review of voting procedures by union members was intentional.[7]

### C. *Objectives of the Act*

Title IV of the Act was the subject of "extensive and vigorous debate" which

manifested a conflict over the extent to which governmental intervention in this most crucial aspect of internal union affairs was necessary or desirable. In the end there emerged a "general congressional policy to allow unions great lati-

tude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts." *Wirtz v. Bottle Blowers Ass'n*, 389 U.S. at 471, 88 S.Ct. at 648 (quoting *Calhoon v. Harvey*, 379 U.S. at 140, 85 S.Ct. at 296).

Section 402 of the Act furthers this policy in several ways. First, it requires that union members exhaust their internal remedies, thereby ensuring that unions will have the first opportunity to address and correct alleged election deficiencies. *See Hodgson v. Local 6799, United Steelworkers*, 403 U.S. 333, 338–39, 91 S.Ct. 1841, 1845, 29 L.Ed.2d 510 (1971); S.Rep. No. 187, *reprinted in* 1959 U.S.Code Cong. & Ad.News, at 2337. Second, it ensures that the first governmental official brought into any election dispute is the Secretary of Labor, who may apply his authority and broad experience to resolve the dispute without court action. Finally, it permits intervention by the courts only as a last resort, and only after an election has been held.

These objectives would be thwarted if pre-election challenges by union members were permitted. No exhaustion requirement applies to such suits, so unions would be deprived of the opportunity to resolve disputes internally. Allowing pre-election suits thus would provide union members "with a convenient device for evading the statutory requirement that they first exhaust their [union] remedies." *Block*, 104 S.Ct. at 2455.

Permitting pre-election challenges also would wrest control over enforcement of the Act from the Secretary and vest it in the courts. This would prevent the Secretary from using his experience to screen

---

7. For essentially this same reason, the court of appeals has concluded that there is no private cause of action to enforce § 203 of the Act, 29 U.S.C. § 433 (1982), which establishes various reporting requirements. *See International Union, UAW v. Brock*, 783 F.2d 237, 241 (D.C.Cir. 1986); *International Union, UAW v. National Right to Work Legal Defense and Education*

*Foundation*, 590 F.2d 1139, 1155 (D.C.Cir.1978). The *National Right to Work* court noted, "The particular consideration given by Congress to who should enforce the different provisions of [the Act] leads to the conclusion that Congress quite clearly decided that only the Secretary of Labor should be able to enforce section 203(b)(1) of the Act." 590 F.2d at 1155.

out frivolous complaints and thereby to minimize interference with internal union affairs. *See Trbovich v. United Mine Workers*, 404 U.S. at 532, 92 S.Ct. at 633. It also would preclude the Secretary from attempting to settle disputes without recourse to the courts. *See Wirtz v. Bottle Blowers Ass'n*, 389 U.S. at 473, 88 S.Ct. at 649.

Finally, judicial review of pre-election claims would frustrate the Act's purpose of protecting unions from "unnecessary judicial interference with their elections." *Trbovich v. United Mine. Workers*, 404 U.S. at 532, 92 S.Ct. at 633; *see also Dunlop v. Bachowski*, 421 U.S. at 569, 95 S.Ct. at 1858–59. Moreover, permitting pre-election challenges would increase the potential for "the undesirable consequences that follow from judicial supervision of a union election." *Local No. 82, Furniture Moving Drivers v. Crowley*, 104 S.Ct. at 2571.

In summary, the Court's review of the language and structure of the Act, its legislative history, and its objectives compel the conclusion that Congress intended to preclude judicial review of alleged section 401(a) violations in pre-election suits brought by union members. Accordingly, this case must be dismissed for lack of subject-matter jurisdiction.