William E. BROCK Secretary of Labor, United States Department of Labor

v.

METROPOLITAN DISTRICT COUNCIL OF CARPENTERS, United Brotherhood of Carpenters and Joiners of America, AFL–CIO.

Civ. A. No. 84–5348.

United States District Court, E.D. Pennsylvania.

Oct. 23, 1986.

On Motion To Compel Jan. 7, 1987.

Edward T. Ellis, Asst. U.S. Atty., for Sec'ty of Labor.

Michael Brodie, Sacks, Basch, Brodie & Sacks, Philadelphia, Pa., for plaintiff-intervenor.

Thomas W. Jennings, Sagot & Jennings, William T. Josem, Markowitz & Richman, Philadelphia, Pa., for Metropolitan Dist. Council of Carpenters.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, Senior District Judge.

This action was brought by the Secretary of Labor (Secretary), United States Department of Labor, alleging violations of Title IV of the Labor Management and Disclosure Act of 1959, 29 U.S.C. § 481 et seq. (the Act), in connection with an election for the presidency of the defendant labor organization, Metropolitan District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO (Council). The Secretary sought to have the election declared null and void and have a new election conducted under the Secretary's supervision. After a full trial, I entered judgment in favor of the Council, finding there had been no violation of either section 401(c) or 401(g) of the Act, 29 U.S.C. § 481(c), (g). On appeal, the Court of Appeals for the Third Circuit affirmed the decision that no violation of section 401(c) had occurred but reversed the decision as to the section 401(g) violation and remanded the case "to enable the district court to determine the effect of this violation on the election." *Donovan v. Metropolitan District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO*, 797 F.2d 140 (3d Cir.1986).

The section 401(g) violation, as defined by the court of appeals, involved a "correction" to a set of minutes of a Council delegates' meeting which contained statements unfavorable to losing presidential candidate, John McCloskey. The "correction" and an accompanying letter by Max Levine, the president of a printers' union, was distributed to members of the District Council and the recording secretaries of each of the local unions at union expense. In finding a violation of 401(g), the court of appeals stated:

It is plain that the Lavine [sic] letter served neither of the purposes of ordinary Council minutes: it did not record the Council's deliberations, and therefore did not inform the membership of what had transpired at the meeting. It is equally plain that the corrected version of Dooley's remarks, while accurate, unjustifiably highlighted those remarks with the intent of hindering McCloskey's candidacy. The use of union money to distribute those documents accordingly violated section 401(g). The mere fact that these documents were distributed in response to McCloskey's demand for a correction of the minutes does not excuse this violation, since what was distributed went far beyond the asked-for correction.

The issue therefore is whether the "correction" and accompanying letter may have affected the outcome of the election. Section 402(c) of the Act, 29 U.S.C. § 482(c), provides:

If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

\* \* \*

(2) that the violation of section 481 of this title may have affected the outcome of an election the court shall declare the election, if any, to be void and direct the conduct of a new election under the supervision of the Secretary....

In *Wirtz v. Hotel Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968), the Supreme Court established guidelines for determining when a Section 401 violation "may have affected the outcome of an election," which requires a finding made upon a preponderance of the evidence. Specifically, the Court ascribed to a proved violation of section 401 the effect of establishing a prima facie case that the violation "may have affected" the outcome. *Id.* at 506–7, 88 S.Ct. at 1751–2. The Court ruled that to overcome the prima facie case, the union must produce evidence, not pure conjecture, "which supports a finding that the violation did not affect the result." *Id.* at 507–8, 88 S.Ct. at 1752.

The Council contends that it has presented sufficient "tangible" evidence to rebut the Secretary's prima facie case and that it has met its burden of proof, which the Council argues is analogous to the relative burdens involved in Title VII cases in that the ultimate burden of persuasion remains with the Secretary. The tangible evidence submitted by the Council is that (1) the defeated candidate, John McCloskey, issued a rebuttal to the offending "correction" of the minutes prior to the election; (2) McCloskey made four campaign mailings after the violation occurred and in the last three mailings did not even mention the matter; and (3) the violation occurred two and one-half months before the election.

There is no direct evidence as to the effect the "correction" and accompanying letter had on the Union membership or the voting of the members in the contested mail ballot election. However, the vote for the presidency was quite close. The three candidates for president were incumbent president, Edward Coryell, John McCloskey, and William McGugan. The tallied votes were as follows:

| | |
|---|---|
| Edward Coryell | 2,828 |
| John McCloskey | 2,684 |
| William McGugan | 1,143 |
| Total votes for President | 6,655 |

By simple arithmetic, Edward Coryell received 42½% of the total votes and John McCloskey received 40⅓%. Numerically, Edward Coryell won the election by 144 votes. Of the 144 vote difference, had one-half of those votes been cast for McCloskey, the election would have resulted in a tie. Therefore, it follows that if 73 of the 6,655 union members were persuaded by reason of the section 401(g) violation to vote for Coryell instead of McCloskey, absent the violation, McCloskey would have won the election. This calculation does not take into consideration the effect, if any, the violation may have had on the members who decided to vote for the third candidate, William McGugan.

In addition to the closeness of the election, the contents of the offending "correction" must also be considered. There is ample evidence in the record to establish that in a union election, there can be little that would be more harmful to a candidate than to be cast in a posture of being anti-union. The so-called "correction" to the minutes and the attached letter by Mr. Levine (solicited by Mr. Dooley, a staunch supporter of Mr. Coryell) seems to have been intended and could reasonably have been construed by the voting membership as evidence of a lack of commitment to the Union by McCloskey because he utilized a non-union business to do his campaign printing and mailing work. In fact, the printing company used by McCloskey was union in its printing shop and non-union in its bulk-mailing business. McCloskey used the print shop but did not use its bulk-mailing services.

The portion of the minutes of the February 16, 1984 Council delegates' meeting to which Mr. McCloskey objected and requested a correction, stated the following:

—Business Representative *MICHAEL DOOLEY* reported that he had spent three days in Federal Court, as a defendant in the case involving John McCloskey, who allegedly had unauthorized possession of the District Council Membership List. Agent Dooley stated that John McCloskey and his lawyer stipulated in Court that his possession of the mailing list was unauthorized. He also pointed out that the printer, to whom Brother McCloskey had given the Mailing List, is non-union.

The correction to this one paragraph was the following:

March 7, 1984

TO: ALL LOCAL UNIONS
SUBJECT: CORRECTION TO BUSINESS REPRESENTATIVE DOOLEY'S REPORT FOR THE DISTRICT COUNCIL MEETING OF FEBRUARY 16, 1984

Business Representative MICHAEL DOOLEY reported he had spent three days in Federal Court, as a defendent [sic] in the case involving John McCloskey, who allegedly had unauthorized possession of the District Counc [sic] Membership mailing list. Agent Dooley stated that all Candidates (for full-time District Council Office) should be treated equally, meaning that after April 15, 1984, all Candidates will be able to mail to the Membership any literature they want. Agent Dooley stated that all the Delegates should understand what went on. We (Edward Coryell, Harrison Langley, and Michael Dooley) spent three days in Court as defendants, because John McCloskey took us to Court. Agent Dooley said he was only involved because he drove our officials to Conshohocken on the day in question, because his car was at the end of the District Council parking lot. Agent Dooley stated we (the District Council) received a phone call that there was an unauthorized mailing list at a Printer, and we had no idea who had put it there. He said that he, President Coryell, and Organizer Langley went up to Conshohocken and went into the building. The Council Officials asked if the printer had their (District Council) property? The proprietor replied, "Yes, here it is". They asked who brought it in? The printer replied that John McCloskey had given the list to him. Agent Dooley then stated that he (John McCloskey) and his lawyer stipulated in Court that he (John McCloskey) knew he had unauthorized posses-

sion of the list. Agent Dooley also said, when John McCloskey took the stand in Court, and was asked where he got the mailing list, he (McCloskey) took the Fifth Amendment. Agent Dooley, stated that the Judge ruled on Tuesday February 14, 1984, in favor of the District Council that McCloskey was not entitled to the mailing list. He (McCloskey) refused to say how he got the mailing list, and that's the way the Judgment read. Agent Dooley said there are 10,000 names on the mailing list that can be sold at $50 a thousand to Insurance Companies, Bulk Mail Printers, and Junk Mail outfits, and anyone could sell that list for $500 a crack. Agent Dooley also said since the day of the "Molly McGuires", up until today with "Solidarity" in Poland, there is a sacred trust of any Labor Organization in this Country that no one [sic] gives out their mailing list to anyone to just walk out of the building with. Agent Dooley said there is a sacred trust that, we as Officers, are obligated to safeguard. Agent Dooley said that, of all people, that John McCloskey knows this, as he is a Recording Secretary in his own Local Union. Agent Dooley said that McCloskey knows the procedure for obtaining labels. Agent Dooley also said the place where he (McCloskey) had the labels put into a cumputer was a non-union bulk mailing house.

Respectfully submitted,

/s/
Gary L. Moran
Secretary-Treasurer

GLM:mmn

Note: Attached is a letter from Max Levine, Vice-President of the Allied Printing Trades Council, verifying that the Archibald Allan Company is non-union for bulk-mailing business. The Printer's Council also states that the Union Bug used on John McCloskey's campaign letter is not a legitimate Union Label, and that the printing was done on a copying machine.

The attached letter by Max Levine stated the following:

March 1, 1984

Mr. Michael Dooley, Business Manager International Brotherhood Carpenters Union
1803 Spring Garden Street
Philadelphia, Pa. 19130

Dear Brother Dooley:

In furtherance of my discussions with you regarding the Allied Printing Trades

Council Label, I have investigated this matter and find the following:

1. That is not a legitimate label.

2. That the printing on the paper is done on a copy machine rather than printed.

3. The Company that used this Label is organized as to their printing department but unorganized in their bulk mailing department.

I have tried to organize that bulk mailing department of the Archibald Allen Company in Roxborough, which is non-Union, for a long period of time with no success.

I hope this answers your questions regarding the use of an illegal label.

> Fraternally,
> /s/
> Max Levine
> President—G.C.I.U. Local 2–B
> Vice Pres.—Allied Prtg. Trades Counc.

It has been judicially and finally determined that this "correction" constituted a section 401(g) violation. The "correction" was clearly intended to persuade voters not to vote for McCloskey. If, in fact, as few as 73 out of the total of the 6,655 members casting votes were thereby persuaded to vote for Coryell rather than McCloskey, the outcome of the election was altered. Those numbers alone are almost sufficient, in and of themselves, to establish by a preponderance of the evidence that the offending minutes "may have affected the outcome of the election."

■ As the court of appeals pointed out: Included in the corrected version, but not in the original, was a lengthy oration concerning the 'sacred trust' imposed upon union officers to maintain the confidentiality of membership lists, an implicit attack on McCloskey for having breached the confidentiality. This attack was underscored by the Levine letter, which reiterated that the bulk-mailing house used by McCloskey was non-union and charged McCloskey with using a false union label on his mailings.

*Donovan v. Metropolitan District Council,* 797 F.2d at 146. It seems almost self-evident that this section 401(g) violation may well have affected and changed the result of this very close election. Certainly the suggested evidence put forward by the defendant Council does not overcome the prima facie case. Even if the analogy to Title VII cases is applicable, on the whole record, it is abundantly clear and I find and conclude by a preponderance of the evidence that the violation may have affected the outcome of the election.

The Council maintains that in the event this court determines that the section 401(g) violation may have affected the outcome of the election, a new election should not be ordered but rather the Secretary's remedy should be limited to that of supervising the next regularly scheduled election in June 1987. In support of this contention, the Council argues that the disruptions and the costs incident to holding a special Council-wide election mitigate in favor of the Union and its members as opposed to the public policy considerations advanced by the Secretary.

■ The Council's proposal, however, fails to address the Secretary's legitimate concerns regarding the potentially illegitimate nature of the 1984 contested election. Since I have concluded that the section 401(g) violation may have affected the outcome of that election, it is imperative that the electoral taint caused by the violation be removed as quickly as practicable. In drafting the provisions of the Act, Congress unequivocally declared that once it is determined that a violation of section 401 may have affected the outcome of a challenged election, "the court *shall* declare the election ... to be void and direct the conduct of a new election under the supervision of the Secretary...." 29 U.S.C. § 482(c) (emphasis added). The congressional declaration of findings, purposes and policy of the Act reveals that the purpose of this remedial legislation was to further the objective "that labor organizations ... and their officials adhere to the highest

standards of responsibility and ethical conduct in administering the affairs of their organizations." 29 U.S.C. § 401(a). Congress concluded that such legislation was required to "afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations ... and their officers and representatives." 29 U.S.C. § 401(b). *See also Wirtz v. Local 153, Glass Bottle Blowers Association,* 389 U.S. 463, 470, 88 S.Ct. 643, 647, 19 L.Ed.2d 705 (1968). Therefore, once it is determined that a labor organization and/or its officials have failed to observe "high standards of responsibility and ethical conduct," as evidenced by a proved section 401 violation, it would be contrary to the best interests of employees and the general public to allow an officer who achieved office as the beneficiary of such violations of the Act to continue to hold that office until the next regularly scheduled election. Since Congress has expressed a desirability "to settle as quickly as practicable the cloud on the incumbents' titles to office," *Wirtz v. Glass Bottle Blowers, Assoc.,* 389 U.S. at 468 n. 7, 88 S.Ct. at 646 n. 7, the fact that the incumbent, Edward Coryell, presently holds office by means of a tainted election mandates that a new supervised election be ordered immediately despite the fact that the next regularly scheduled election is to be conducted in June 1987.

I conclude that the Council's violation of section 401(g) of the Act may have affected the outcome of the 1984 presidential election and that the only appropriate remedy is to set aside the tainted election and require that a new election be conducted under the supervision of the Secretary.

### ORDER

Upon consideration of plaintiff's motion for an order directing defendant to conduct a new election, defendant's response and plaintiff's reply thereto, for the reasons stated in the accompanying memorandum, the court finds that defendant's violation of section 401(g) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 481(g), may have affected the outcome of the 1984 election for president; therefore, it is

Ordered that defendant, Metropolitan District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, shall conduct a new election for the office of president, within one hundred and twenty (120) days of the date of this order, to be conducted under the supervision of the Secretary of Labor, pursuant to 29 U.S.C. § 482(c), and insofar as lawful and practicable, in accordance with the by-laws and constitution of the labor organization.

### ON MOTION TO COMPEL

On October 23, 1986, this court issued a memorandum opinion and order declaring void the June 1984 election for the office of president of the Metropolitan District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America (District Council) and ordered a new election to be conducted for that office, under the supervision of the Secretary of Labor (Secretary), pursuant to 29 U.S.C. § 482(c). The order directed a new election to be held within 120 days of the date of that order, to be conducted pursuant to the constitution of the United Brotherhood of Carpenters and Joiners of America and the bylaws of the District Council "insofar as lawful and practicable."

The Union and a representative of the United States Department of Labor have met to discuss the rules for the election and the mechanics of the election process and have agreed to the following schedule: the fourteen local unions affiliated with the District Council will hold nominations during the month of January 1987; the ballots for the election will be mailed to the eligible voters on January 29, 1987, and will be tallied on Saturday, February 14, 1987. Every aspect of the election process will be supervised by representatives of the Department of Labor.

In connection with the impending election, a motion has been filed with this court by the Secretary of Labor to compel com-

pliance with the supervisory instructions that were issued by the election supervisor for the Department of Labor on behalf of the Secretary. In its motion, the Secretary requests this court to enforce the following two instructions: (1) declare void the two-year suspension, effective February 1, 1985, of presidential candidate John McCloskey from "all union activities," and (2) direct the Union to reinstate McCloskey to all rights and privileges of membership, including reinstatement to the office of recording secretary of Local 1856, from which McCloskey was removed as a result of the suspension.

On November 5, 1986, the Secretary's election supervisor issued an instruction to the Union in which she declared void the McCloskey suspension and directed the District Council to remedy the effects of the suspension by immediately reinstating McCloskey "to all rights and privileges of membership in the Carpenters union, including the right to attend union meetings, the right to participate in union affairs, and the right to hold office." The election supervisor further directed that because the February 1985 suspension resulted in the removal of McCloskey from his position as elected recording secretary of Local 1856, the Union must immediately reinstate McCloskey to that position. The election supervisor issued the instruction to the Union based on the finding that "in suspending Mr. McCloskey, the district council retaliated against Mr. McCloskey for his insurgent political activities, infringing upon his right to run for office without being subject to discipline." The election supervisor therefore concluded that "the charges against McCloskey were politically motivated and processed with the disruption of McCloskey's campaign as a major goal." Accordingly, the discipline was found by the election supervisor to be invalid as a violation of sections 401(e) and 101(a)(5) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 481(e) and 411(a)(5).

By letter dated November 12, 1986, the Union took a legal position contrary to that of the Secretary's and refused to comply with the supervisory instruction. Instead, it proposed that it would consider the immediate prospective termination of the suspension of McCloskey at its next regularly scheduled meeting, which was held on November 20, 1986. At the meeting, the delegates of the District Council passed a motion and subsequently forwarded a communication to each local union affiliated with the District Council advising that effective immediately, McCloskey would be "afforded the rights of membership in the Council, such as, being permitted to be a Candidate for Union Office, campaign for said Office, and attend Local Union Meetings." His suspension however was not declared void.

Although the Union has agreed to allow McCloskey to run and campaign for office in the supervised election, the Secretary continues to take the position that the Union's refusal to declare the suspension void forces McCloskey "to run under a cloud of possible wrongdoing." Additionally, the Secretary maintains that the Union's refusal to return McCloskey to his elected position in Local 1856 "deprive[s] him of an elected political platform from which to run against incumbent Coryell, who is one of the persons who filed the disciplinary charges that led to the suspension." For the reasons stated below, the Secretary's motion will be granted in part and denied in part.

The Secretary maintains that under the provisions of section 402(c) of the LMRDA, 29 U.S.C. § 482(c), the Secretary of Labor has the authority to declare the suspension of McCloskey void and to direct remedial action in response to a finding of violations of the LMRDA by the union. The Secretary argues that in supervising an election under section 402(c), the Secretary's role is to identify potential or actual violations of Title IV during the course of supervising the election and to either prevent such violations from occurring or control them so that the Secretary is able to certify to the court at the conclusion of the election process that such violations did not affect the outcome of the election. *See e.g. Donovan*

*v. Pennsylvania Optical Workers Association,* 603 F.Supp. 193, 196 (E.D.Pa.1985); *Donovan v. Local 299, Teamsters,* 515 F.Supp. 1274, 1285 (E.D.Mich.1981). The Secretary contends that the LMRDA affords him broad discretionary authority in supervising an election and that the scope of judicial review of the Secretary's decisions is narrow.

██ It is generally recognized by the courts that the statutory scheme of the LMRDA contemplates reliance on the "special knowledge and discretion of the Secretary for the determination of both [the existence of a] probable violation and the probable effect [of that violation on an election]." *Dunlop v. Bachowski,* 421 U.S. 560, 571, 95 S.Ct. 1851, 1859, 44 L.Ed.2d 377 (1975). Therefore a reviewing court is generally not authorized to substitute its judgment for the decision of the Secretary. *Id. See also Usery v. Local Union No. 639 International Brotherhood of Teamsters,* 543 F.2d 369, 378 (D.C.Cir.1976). When a determination is made by the Secretary regarding a violation and its potential impact on an election, the Secretary must supply to the court a sufficiently detailed statement of reasons supporting his determination "to enable the reviewing court to determine with some measure of confidence whether or not the discretion, which still remains in the Secretary, has been exercised in a manner that is neither arbitrary nor capricious." *Dunlop v. Bachowski,* 421 U.S. at 571, 95 S.Ct. at 1859. A court's review of actions taken by the Secretary in his or her supervisory capacity is therefore generally confined to an examination of the "reasons" statement and a determination of whether the statement provided by the Secretary "evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Id.* at 572–73, 95 S.Ct. at 1860. Thus, since the Secretary is entrusted with considerable discretion in supervising union elections, actions taken by the Secretary must generally be heeded and will not be disturbed unless manifestly arbitrary or irrational. *See Brennan v. Local 551, United Autoworkers,* 486 F.2d 6, 8 (7th Cir.

1973); *Usery v. Local 1369, Textile Workers,* No. 74–3033 slip op. (E.D.Pa. May 14, 1976) (Huyett, J.).

In the case before me, the Secretary determined that the suspension of McCloskey from union activities was an act of political retaliation in violation of section 401(e) of the LMRDA and that the means by which the Union imposed the suspension deprived McCloskey of a full and fair hearing, in violation of section 101(a)(5) of the LMRDA.

The position taken by both the election supervisor in her November 5, 1986 supervisory instructions and the Secretary in this present motion to compel compliance with those instructions is substantially similar to the position taken by the Secretary in his March 1985 motion to enjoin the McCloskey suspension. It is therefore curious that the District Council would argue in its brief in opposition to the Secretary's motion to compel compliance with the supervisory instructions that "[a]lthough expressly invited to do so by John McCloskey, the Secretary never made a claim under section 401(e), i.e., that the allegedly improper and unlawful discipline metted out to John McCloskey, was unlawful and, as a consequence, was never at issue in the underlying lawsuit in this matter." (Defendant's Brief at 5). In fact, the Secretary expressly argued in his March 1985 motion for injunctive relief that "the suspension of John C. McCloskey voted by the district council and sustained by the international union [was] a violation of section 401(e) of the Act, 29 U.S.C. § 481(e)," (Secretary's Motion at 2) and that the disciplinary action was merely "a poorly disguised weapon of retaliation for McCloskey's political opposition to the incumbent." (Secretary's Brief in Support of Motion at 2). Therefore, the District Council's argument that the relief sought by the Secretary is time-barred due to the Secretary's failure to raise these issues previously is completely without merit.

In reaching the determination that the disciplinary action taken against McClos-

key violated sections 401(e) and 101(a)(5) of the LMRDA, the election supervisor considered information uncovered by the Department of Labor and the United States Attorney's Office as well as the evidence presented at the hearings held before this court on April 22–23, 1985 and June 12–13, 1985. The election supervisor carefully articulated the basis for her conclusions and supplied ample reasons justifying her conclusion that "the charges against McCloskey were politically motivated and processed with the disruption of McCloskey's campaign as a major goal."

■ Since the factors considered by the election supervisor on behalf of the Secretary provide adequate support for her conclusions, the determination that the McCloskey suspension violated sections 401(e) and 101(a)(5) is neither arbitrary nor irrational. The Secretary's determination, therefore, will not be disturbed.

With regard to the remedies sought by the Secretary, it is maintained by the Secretary that the unlawful suspension of McCloskey "may affect the outcome of the supervised election" and therefore the court should order the Union to void the suspension and remedy its effects.

In response, the District Council argues that since McCloskey has been reinstated to full membership rights, the Secretary's motion is now moot. Although McCloskey is now free to attend union meetings, communicate with the union membership, campaign for union office and have his name appear on the official election ballot, McCloskey's suspension has not been lifted. Therefore the Secretary's motion is not moot since the potential effects of the suspension still exist.

The Secretary states that in order to supervise a fair election, he must be permitted "to remove the cloud of the suspension from McCloskey's candidacy." (Secretary's Memorandum at 12). He argues that by allowing McCloskey to run while under suspension, "the union leaves McCloskey under a cloud of wrongdoing and builds into the campaign an anti-McCloskey weapon available to any opposing candidate." (Secretary's Memorandum at 12). Additionally, the Secretary points out that the Union's action of reinstating McCloskey's membership rights while not removing his suspension raises questions of how a suspended union member can run for office and whether other suspended members will now also be eligible to run for office.

■ For these reasons, it is my view that it was completely appropriate for the Secretary to instruct the District Council to void the suspension of McCloskey and that such an instruction was neither arbitrary nor capricious. I will therefore not disturb this determination and will grant the Secretary's motion to compel compliance with the supervisory instruction declaring void the suspension of John McCloskey.

The Secretary also seeks an order directing the District Council to reinstate McCloskey to the office of recording secretary of Local 1856 of the Carpenter's union. It is the Secretary's position that the suspension was used as a pretext for removing McCloskey from his elected position as recording secretary and that "one fruit of the unlawful suspension is that it deprives McCloskey of the political advantage of running in the supervised election from an existing local union office." (Secretary's Memorandum at 13).

The District Council maintains that the Secretary does not have the authority to issue a supervisory instruction ordering the reinstatement of McCloskey to the local union office since neither Title I nor Title IV of the LMRDA provide for any such relief.

It is generally recognized that the Bill of Rights section of Title I of the LMRDA, 29 U.S.C. §§ 411–415, affords union members the right to freedom of expression without fear of sanctions by the union, including loss of union membership. It does not provide a union member the ability to challenge his removal from office however, since it is the union-member relationship, not the union-officer or union-employee relationship, that is protected by this Title.

*Finnegan v. Leu,* 456 U.S. 431, 436–37, 102 S.Ct. 1867, 1870–71, 72 L.Ed.2d 239 (1982); *Harrison v. Local 54 of AFSCME,* 518 F.2d 1276 (3d Cir.1975); *Martire v. Laborers' Local Union 1058,* 410 F.2d 32, 34 (3d Cir.1969); *Sheridan v. United Brotherhood of Carpenters,* 306 F.2d 152, 156–57 (3d Cir.1962). The District Council argues that nothing in Title I confers upon the Secretary any rights over and above those of the ordinary union member and thus, if a union member cannot obtain reinstatement to union office by virtue of Title I, neither can the Secretary. (Defendant's Brief at 17). Similarly, the District Council contends that section 401(e) of the LMRDA "does not provide any guarantee relating to the union/officer relationship, but only the union/member relationship." (Defendant's Brief at 17).

■ As pointed out by the District Council in its brief, the Secretary has not provided this court with any statutory or judicial authority to support the proposition that the Secretary of Labor possesses the authority to issue a supervisory instruction ordering the reinstatement of a union member to union office. It is my view that the Secretary in this case does not possess the authority to order the reinstatement of McCloskey to the elected office of recording secretary of Local 1856 of the Union, particularly in light of the fact that upon the removal of McCloskey, a new election for the unexpired term of that office was held without challenge or objection from either the union members or the Secretary. Since the current occupant of the office of recording secretary was elected by the union's membership, it does not appear that the Secretary would have the authority to order the removal of that person from office unless the Secretary brought an action challenging the validity of that election. I therefore conclude that it is beyond the authority and power of the Secretary, in his or her supervisory capacity, to instruct that a union member vacate an elected position so that an improperly suspended union member can be reinstated to that position.

Of additional significance is the fact that the Secretary is seeking reinstatement of McCloskey to an elected office in a local union. Local 1856 has not been charged or accused of any violations of the LMRDA and the supervised election is for the office of president of the District Council, not Local 1856. The supervisory instruction issued by the Secretary to the District Council would in effect place a penalty upon Local 1856 and its elected recording secretary. Although this might remove all possible stigma against McCloskey, it might equally place an unfounded stigma upon Local 1856 and the present incumbent secretary. Members of Local 1856, including the present elected recording secretary, also have the right to seek the office of president of the District Council. In addition, it is at least doubtful that the District Council would be legally capable of carrying out the supervisory instruction, even were it so inclined, and/or so ordered by the court.

For these reasons, the Secretary's motion to compel compliance with the supervisory instruction directing the Union to reinstate McCloskey to the office of recording secretary of Local 1856 of the Carpenter's union will be denied.

## ORDER ON MOTION TO COMPEL

Upon consideration of the Secretary of Labor's motion to compel compliance with supervisory instructions and the defendant's response thereto, for the reasons stated in the accompanying Memorandum, it is

ORDERED that the supervisory instruction issued by the Secretary of Labor to the Metropolitan District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO declaring void the two-year suspension, effective February 1, 1985, of John McCloskey from all union activities is hereby enforced, and the said Metropolitan District Council is ordered forthwith to fully comply with said instruction. It is

FURTHER ORDERED that the Secretary's motion to compel compliance with the supervisory instruction directing the

Metropolitan District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO to reinstate Mr. McCloskey to the office of recording secretary of Local 1856 is DENIED.