# DUNLOP, SECRETARY OF LABOR *v.* BACHOWSKI ET AL.

No. 74–466.  Argued April 21, 1975—Decided June 2, 1975

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and DOUGLAS, STEWART, WHITE, MARSHALL, BLACKMUN, and

PowELL, JJ., joined. BURGER, C. J., filed a concurring opinion, *post*, p. 590. REHNQUIST, J., filed an opinion concurring in the result in part and dissenting in part, *post*, p. 591.

*Mark L. Evans* argued the cause for petitioner. On the brief were *Solicitor General Bork, Assistant Attorney General Hills, Deputy Solicitor General Wallace,* and *Beate Bloch.*

*Joseph L. Rauh, Jr.,* argued the cause for respondent Bachowski. With him on the brief were *John Silard, Elliott C. Lichtman,* and *Kenneth J. Yablonski. Michael H. Gottesman* argued the cause for respondent United Steelworkers of America, AFL–CIO. With him on the brief was *Bernard Kleiman.**

MR. JUSTICE BRENNAN delivered the opinion of the Court.

On February 13, 1973, the United Steelworkers of America (USWA) held district officer elections in its several districts. Respondent Bachowski (hereinafter respondent) was defeated by the incumbent in the election for that office in District 20.[1] After exhausting his remedies within USWA, respondent filed a timely complaint with petitioner, the Secretary of Labor, alleging violations of § 401 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 73 Stat. 532, 29 U. S. C. § 481, thus invoking 29 U. S. C. §§ 482 (a), (b), which require that the Secretary investigate the complaint and

---

*Briefs of *amici curiae* urging affirmance were filed by *Joseph A. Yablonski* and *Daniel B. Edelman* for the United Mine Workers of America, and by *Clarice R. Feldman* for the Association for Union Democracy, Inc.

[1] The result of the election was as follows:

| | |
|---|---|
| Kay Kluz (incumbent) | 10,558 |
| Walter Bachowski (respondent) | 9,651 |
| Morros Brummett | 3,566 |

decide whether to bring a civil action to set aside the election.[2] Similar complaints were filed respecting five other district elections. After completing his investigations, the Secretary filed civil actions to set aside the elections in only two districts. With respect to the election in District 20, he advised respondent by letter dated November 7, 1973, that "[b]ased on the investigative findings, it has been determined . . . that civil action to set aside the challenged election is not warranted."

On November 7, 1973, respondent filed this action against the Secretary and USWA in the District Court for the Western District of Pennsylvania.[3] The com-

[2] Title 29 U. S. C. § 482 provides:

"(a) Filing of complaint; presumption of validity of challenged election.

"A member of a labor organization—

"(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

"(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

"may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title . . . . The challenged election shall be presumed valid pending a final decision thereon . . . and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

"(b) Investigation of complaint; commencement of civil action by Secretary; jurisdiction; preservation of assets.

"The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary . . . ."

[3] The complaint was filed on the date, November 7, 1973, of the letter quoted in the text. The complaint alleges that on Novem-

plaint asked that, among other relief, "the Court declare the actions of the Defendant Secretary to be arbitrary and capricious and order him to file suit to set aside the aforesaid election." The District Court conducted a hearing on November 8, and after argument on the question of reviewability of the Secretary's decision, concluded that the court lacked "authority" to find that the action was capricious and to order him to file suit. Civil Action No. 73–0954, WD Pa., Doc. 9, p. 27. The hearing was followed by an order dated November 12, dismissing the suit.[4] The Court of Appeals for the Third Circuit reversed, 502 F. 2d 79 (1974).

The Court of Appeals held, *first,* that the District Court had jurisdiction of respondent's suit under 28 U. S. C. § 1337 as a case arising under an Act of Congress regulating commerce, the LMRDA, 502 F. 2d, at 82–83; *second,* that the Administrative Procedure Act, 5 U. S. C. §§ 702 and 704, subjected the Secretary's decision to judicial review as "final agency action for which there is no other adequate remedy in a court," § 704, and that his decision was not, as the Secretary maintained, agency action pursuant to "(1) statutes [that] preclude judicial review; or (2) agency action [that] is committed to agency discretion by law," excepted by § 701 (a) from judicial review, 502 F. 2d, at 83–88; [5] and, *third,* that the scope of judicial

ber 5, respondent "received a phone call from the Pittsburgh office of the Defendant Secretary advising him that the Defendant Secretary had decided not to file suit to set aside the contested election in District 20 USWA."

[4] The Order of November 12 recites that "it is determined that this Court lacks jurisdiction over the subject matter of this Complaint." In view of our result, it is immaterial whether the dismissal was on the ground of lack of jurisdiction or of nonreviewability, or on both grounds.

[5] Section 606 of the LMRDA, 29 U. S. C. § 526, provides:

"The provisions of the Administrative Procedure Act shall be

review—governed by § 706 (2)(A), "to ensure that the Secretary's actions are not arbitrary, capricious, or an abuse of discretion," 502 F. 2d, at 90—entitled respondent, who sought "to challenge the factual basis for [the Secretary's] conclusion either that no violations occurred or that they did not affect the outcome of the election," *id.*, at 89, "to a sufficiently specific statement of the factors upon which the Secretary relied in reaching his decision . . . so that [respondent] may have information concerning the allegations contained in his complaint." *Id.*, at 90.[6] We granted certiorari *sub nom. Brennan* v. *Bachowski,* 419 U. S. 1068 (1974).

---

applicable to . . . any adjudication, authorized or required pursuant to the provisions of this chapter."

The pertinent provisions of the Administrative Procedure Act, 5 U. S. C. §§ 701–706, provide:

"§ 701.  Application; definitions.

"(a) This chapter applies . . . except to the extent that—

"(1) statutes preclude judicial review; or

"(2) agency action is committed to agency discretion by law. . . ."

"§ 702.  Right of review.

"A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof."

.          .          .          .          .

"§ 704.  Actions reviewable.

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . ."

.          .          .          .          .

"§ 706.  Scope of review.

". . . The reviewing court shall—

.          .          .          .          .

"(2) hold unlawful and set aside agency action . . . found to be—

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."

[6] The closing sentence of the opinion as originally filed on July 26, 1974, required the District Court to permit respondent "to examine the data and reports" upon which the Secretary relied.  The present

We agree that 28 U. S. C. § 1337 confers jurisdiction upon the District Court to entertain respondent's suit, and that the Secretary's decision not to sue is not excepted from judicial review by 5 U. S. C. § 701 (a); rather, §§ 702 and 704 subject the Secretary's decision to judicial review under the standard specified in § 706 (2) (A). We hold, however, that the Court of Appeals erred insofar as its opinion construes § 706 (2)(A) to authorize a trial-type inquiry into the factual bases of the Secretary's conclusion that no violations occurred affecting the outcome of the election. We accordingly reverse the judgment of the Court of Appeals insofar as it directs further proceedings on remand consistent with the opinion of that court, and direct the entry of a new judgment ordering that the proceedings on remand be consistent with this opinion of this Court.

## I

The LMRDA contains no provision that explicitly prohibits judicial review of the decision of the Secretary not to bring a civil action against the union to set aside an allegedly invalid election. There is no such prohibition in 29 U. S. C. § 483. That section states that "[t]he remedy provided by this subchapter for challenging an election already conducted shall be exclusive." Certain LMRDA provisions concerning pre-election conduct, 29 U. S. C. §§ 411–413 and 481 (c), are enforceable in suits brought by individual union members. Provisions concerning the conduct of the election itself, however, may be enforced only according to the post-election procedures specified in 29 U. S. C. § 482. Section 483 is thus not a prohibition against judicial review but simply

version was substituted by order dated September 3, 1974, which also added n. 17, reciting the Court of Appeals' recognition that certain data in the Secretary's files may be privileged and confidential.

underscores the exclusivity of the § 482 procedures in post-election cases.

In the absence of an express prohibition in the LMRDA, the Secretary, therefore, bears the heavy burden of overcoming the strong presumption that Congress did not mean to prohibit all judicial review of his decision. "The question is phrased in terms of 'prohibition' rather than 'authorization' because a survey of our cases shows that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 140 (1967). "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Id.,* at 141. See also *Rusk* v. *Cort,* 369 U. S. 367, 379–380 (1962); *Citizens to Preserve Overton Park* v. *Volpe,* 401 U. S. 402, 410 (1971).

The Secretary urges that the structure of the statutory scheme, its objectives, its legislative history, the nature of the administrative action involved, and the conditions spelled out with respect thereto, combine to evince a congressional meaning to prohibit judicial review of his decision.[7] We have examined the materials the Secretary relies upon. They do not reveal to us any congressional purpose to prohibit judicial review. Indeed, there is not even the slightest intimation that Congress gave thought to the matter of the preclusion of judicial review. "The only reasonable inference is that the possibility did not occur to the Congress." *Wirtz* v. *Bottle Blowers Assn.,* 389 U. S. 463, 468 (1968).

---

[7] We agree with the Court of Appeals, for the reasons stated in its opinion, 502 F. 2d 79, 86–88 (CA3 1974), that there is no merit in the Secretary's contention that his decision is an unreviewable exercise of prosecutorial discretion.

We therefore reject the Secretary's argument as without merit. He has failed to make a showing of "clear and convincing evidence" that Congress meant to prohibit all judicial review of his decision. In that circumstance, courts "are necessarily [not] without power or jurisdiction . . . if it should clearly appear that the Secretary has acted in an arbitrary and capricious manner by ignoring the mandatory duty he owes plaintiffs under the powers granted by the Congress. Leedom v. Kyne, 358 U. S. 184 . . . (1958)." *DeVito* v. *Shultz*, 300 F. Supp. 381, 382 (DC 1969) (*DeVito I*). But see *Ravaschieri* v. *Shultz*, 75 L. R. R. M. 2272 (SDNY 1970); *McArthy* v. *Wirtz*, 65 L. R. R. M. 2411 (ED Mo. 1967); *Katrinic* v. *Wirtz*, 62 L. R. R. M. 2557 (DC 1966). Our examination of the relevant materials persuades us, however, that although no purpose to prohibit all judicial review is shown, a congressional purpose narrowly to limit the scope of judicial review of the Secretary's decision can, and should, be inferred in order to carry out congressional objectives in enacting the LMRDA.

## II

Four prior decisions of the Court construing the LMRDA identify the congressional objectives and thus put the scope of permissible judicial review in perspective. Congress "decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest . . . [and] decided not to permit individuals to block or delay union elections by filing federal-court suits . . . ." [8] *Calhoon* v. *Harvey*, 379 U. S.

---

[8] See S. Rep. No. 187, 86th Cong., 1st Sess., 7 (1959):

"In acting on this bill [S. 1555] the committee followed three principles:

"1. The committee recognized the desirability of minimum interference by Government in the internal affairs of any private organization. . . . [I]n establishing and enforcing statutory stand-

134, 140 (1964). Congress' concern was "to settle as quickly as practicable the cloud on the incumbents' titles to office," *Wirtz* v. *Bottle Blowers Assn., supra,* at 468 n. 7, and in "deliberately [giving] exclusive enforcement authority to the Secretary . . . emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member. . . ." *Id.,* at 473–475. "[I]t is most improbable that Congress deliberately settled exclusive enforcement jurisdiction on the Secretary and granted him broad investigative powers to discharge his responsibilities, yet intended the shape of the enforcement action to be immutably fixed by the artfulness of a layman's complaint . . . . The expertise and resources of the Labor Department were surely meant to have a broader play. . . ." *Wirtz* v. *Laborers' Union,* 389 U. S. 477, 482 (1968). ". . . Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted . . . ." *Trbovich* v. *Mine Workers,* 404 U. S. 528, 532 (1972). ". . . Congress in-

---

ards great care should be taken not to undermine union self-government or weaken unions in their role as collective-bargaining agents.

"2. Given the maintenance of minimum democratic safeguards and detailed essential information about the union, the individual members are fully competent to regulate union affairs. . . .

"3. Remedies for the abuses should be direct. . . . [T]he legislation should provide an administrative or judicial remedy appropriate for each specific problem."

See also *ibid.:*

"The bill reported by the committee, while it carries out all the major recommendations of the [McClellan] committee, does so within a general philosophy of legislative restraint."

tended to prevent members from pressing claims not thought meritorious by the Secretary, and from litigating in forums or at times different from those chosen by the Secretary." *Id.*, at 536. "[T]he statute gives the individual union members certain rights against their union, and 'the Secretary of Labor in effect becomes the union member's lawyer' for purposes of enforcing those rights . . . ." *Id.*, at 538–539.

*Bottle Blowers Assn.* reveals two more considerations pertinent to determination of the scope of judicial review. Section 482 (b) leaves to the Secretary, in terms, only the question whether he has probable cause to believe that a violation has occurred, and not the question whether the outcome of the election was probably affected by the violation. *Bottle Blowers* construed § 482 (b), however, as conferring upon the Secretary discretion to determine both the probable violation and the probable effect. "[T]he Secretary may not initiate an action until his own investigation confirms that a violation . . . probably infected the challenged election." 389 U. S., at 472. See also *Schonfeld* v. *Wirtz,* 258 F. Supp. 705, 707–708 (SDNY 1966).

In addition, in rejecting the argument that the unlawfulness infecting a challenged election could be washed away by an intervening unsupervised union election, the Court stated, 389 U. S., at 474:

". . . Congress' evident conclusion that only a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control in the succeeding election . . . was reached in light of the abuses surfaced by the extensive congressional inquiry showing how incumbents' use of their inherent advantage over potential rank and file challengers established and perpetu-

ated dynastic control of some unions. . . . These abuses were among the 'number of instances of breach of trust . . . [and] disregard of the rights of individual employees . . .' upon which Congress rested its decision that the legislation was required in the public interest." [9]

Two conclusions follow from this survey of our decisions: (1) since the statute relies upon the special knowledge and discretion of the Secretary for the determination of both the probable violation and the probable effect, clearly the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit; (2) therefore, to enable the reviewing court intelligently to review the Secretary's determination, the Secretary must provide the court and the complaining witness with copies of a statement of reasons supporting his determination. "[W]hen action is taken by [the Secretary] it must be such as to enable a reviewing Court to determine with some measure of confidence whether or not the discretion, which still remains in the Secretary, has been exercised in a manner that is neither arbitrary nor capricious. . . . [I]t is necessary for [him] to delineate and make explicit the basis upon which discretionary action is taken, particularly in a case such as this where the decision taken consists of a failure to

---

[9] Respondent referred at oral argument to the following statement in the Brief for United Mine Workers of America as *Amicus Curiae* 3: "The struggle by UMWA members to overturn tyranny in their Union was a lonely and difficult one in part because of apathy and indifference, if not outright prejudice against them, by the officials within the United States Department of Labor, purportedly the guardians of union members' rights under LMRDA. Too often, union reformers have found the Department of Labor allied with union incumbents against their interests."

No issue of this nature is raised by respondent's complaint in this case.

act after the finding of union election irregularities." *DeVito I,* 300 F. Supp., at 383; see also *Valenta* v. *Brennan,* No. C 74–11 (ND Ohio 1974).

Moreover, a statement of reasons serves purposes other than judicial review. Since the Secretary's role as lawyer for the complaining union member does not include the duty to indulge a client's usual prerogative to direct his lawyer to file suit, we may reasonably infer that Congress intended that the Secretary supply the member with a reasoned statement why he determined not to proceed. "[A]s a matter of law . . . the Secretary is not required to sue to set aside the election whenever the proofs before him suggest the suit *might* be successful. There remains in him a degree of discretion to select cases and it is his subjective judgment as to the probable outcome of the litigation that must control." *DeVito* v. *Shultz,* 72 L. R. R. M. 2682, 2683 (DC 1969) (*DeVito II*) (emphasis added). But "[s]urely Congress must have intended that courts would intercede sufficiently to determine that the provisions of Title IV have been carried out in harmony with the implementation of other provisions of [the LMRDA]." *DeVito I, supra,* at 383. Finally, a "reasons" requirement promotes thought by the Secretary and compels him to cover the relevant points and eschew irrelevancies, and as noted by the Court of Appeals in this case, the need to assure careful administrative consideration "would be relevant even if the Secretary's decision were unreviewable." 502 F. 2d, at 88–89, n. 14.

The necessity that the reviewing court refrain from substitution of its judgment for that of the Secretary thus helps define the permissible scope of review. Except in what must be the rare case, the court's review should be confined to examination of the "reasons" statement, and the determination whether the statement,

without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. Thus, review may not extend to cognizance or trial of a complaining member's challenges to the factual bases for the Secretary's conclusion either that no violations occurred or that they did not affect the outcome of the election. The full trappings of adversary trial-type hearings would be defiant of congressional objectives not to permit individuals to block or delay resolution of post-election disputes, but rather "to settle as quickly as practicable the cloud on the incumbents' titles to office"; and "to protect unions from frivolous litigation and unnecessary interference with their elections." "If . . . the Court concludes . . . there is a rational and defensible basis [stated in the reasons statement] for [the Secretary's] determination, then that should be an end of this matter, for it is not the function of the Court to determine whether or not the case should be brought or what its outcome would be." *DeVito II, supra,* at 2683.

Thus, the Secretary's letter of November 7, 1973, may have sufficed as a "brief statement of the grounds for denial" for the purposes of the Administrative Procedure Act, 5 U. S. C. § 555 (e),[10] but plainly it did not suffice as a statement of reasons required by the LMRDA. For a statement of reasons must be adequate to enable the court to determine whether the Secretary's decision was reached for an impermissible reason or for no reason at all. For this essential purpose, although detailed findings of fact are not required, the statement of reasons should inform

---

[10] Title 5 U. S. C. § 555 (e) provides:

"Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceedings. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial."

the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based.

The Secretary himself suggests that the rare case that might justify review beyond the confines of the reasons statement might arise, for example, "if the Secretary were to declare that he no longer would enforce Title IV, or otherwise completely abrogate his enforcement responsibilities . . . [or] if the Secretary prosecuted complaints in a constitutionally discriminatory manner . . . ." Brief for Petitioner 9 n. 3. Other cases might be imagined where the Secretary's decision would be "plainly beyond the bounds of the Act [or] clearly defiant of the Act." *DeVito II,* 72 L. R. R. M., at 2682. Since it inevitably would be a matter of grave public concern were a case to arise where the complaining member's proofs sufficed to require judicial inquiry into allegations of that kind, we may hope that such cases would be rare indeed.

There remains the question of remedy. When the district court determines that the Secretary's statement of reasons adequately demonstrates that his decision not to sue is not contrary to law, the complaining union member's suit fails and should be dismissed. *Howard* v. *Hodgson,* 490 F. 2d 1194 (CA8 1974). Where the statement inadequately discloses his reasons, the Secretary may be afforded opportunity to supplement his statement. *DeVito I,* 300 F. Supp., at 384; *Valenta* v. *Brennan, supra.*[11] The court must be mindful, however, that

---

[11] Judge Gesell of the District Court for the District of Columbia fashioned an acceptable procedure in *DeVito I,* 300 F. Supp. 381 (1969). Aggrieved union members complained of irregularities in the election of regular officers of the International Union. They also complained of irregularities in the election of an International President Emeritus. The office of the Secretary of Labor re-

endless litigation concerning the sufficiency of the written statement is inconsistent with the statute's goal of expeditious resolution of post-election disputes.

The district court may, however, ultimately come to the conclusion that the Secretary's statement of reasons on its face renders necessary the conclusion that his decision not to sue is so irrational as to constitute the decision arbitrary and capricious. There would then be presented the question whether the district court is empowered to order the Secretary to bring a civil suit against the union to set aside the election. We have no occasion to address that question at this time. It obviously presents some difficulty in light of the strong evidence that Congress deliberately gave exclusive enforcement authority to the Secretary.[12] See *Passenger*

---

fused to bring suit to set aside either election, supplying separate statements of reasons in the cases. Judge Gesell determined that the statement respecting the regular election of officers was inadequate, but that the statement respecting the election of a President Emeritus was sufficient. He therefore ordered the Secretary to reopen consideration of the former complaint and to submit "a fuller statement of reasons and explanation," if on reconsideration the Secretary remained determined not to bring suit. The Secretary's motion to dismiss and for summary judgment was denied without prejudice to a further submission of reasons on that aspect of the case but was granted as respects the election of the President Emeritus. Later, following the Secretary's reconsideration of the election of the regular officers, and his adherence to his determination not to file suit, Judge Gesell conducted another hearing. *DeVito II*, 72 L. R. R. M. 2682 (DC 1969). Judge Gesell concluded on this occasion that the Secretary "satisfied the Court that there is a rational basis for his not proceeding" and granted the Secretary's motion to dismiss.

[12] USWA argues that Arts. II and III of the Constitution "do not countenance a court order requiring the executive branch, against its wishes, to institute a lawsuit in federal court." "[A] judicial direction that such an action be brought would violate the separation of powers . . . [and] because the Secretary agrees

*Corp* v. *Passengers Assn.,* 414 U. S. 453, 465 (1974) (BRENNAN, J., concurring); *Nader* v. *Saxbe,* 162 U. S. App. D. C. 89, 92–93, n. 19, 497 F. 2d 676, 679–680, n. 19 (1974). We prefer therefore at this time to assume that the Secretary would proceed appropriately without the coercion of a court order when finally advised by the courts that his decision was in law arbitrary and capricious.

## III

The opinion of the Court of Appeals authorized review beyond the permissible limits defined in this opinion. After first stating that "judicial review of the Secretary's decision not to bring suit should extend at the very least to an inquiry into his reasons for that decision . . . ," 502 F. 2d, at 88–89, the court noted: "The relief requested by the complaint . . . however, goes beyond such an inquiry. . . . [P]laintiff seeks an opportunity to challenge the factual basis for [the Secretary's] conclusion either that no violations occurred or that they did not affect the outcome of the election." *Id.,* at 89. The court concluded that in that circumstance "plaintiff is entitled to a sufficiently specific statement of the factors upon which the Secretary relied in reaching his decision not to file suit so that plaintiff may have information concerning the allegations contained in his complaint." *Id.,* at 90.

But the key allegation of plaintiff's verified complaint is paragraph 18 which alleges: "Notwithstanding the fact that the Defendant Secretary's investigation has sub-

---

with the union that Title IV does not require a new election, the lawsuit would be one lacking the requisite adversity of interest to constitute a 'case' or 'controversy' as required by Article III." Since we do not consider at this time the question of the court's power to order the Secretary to file suit, we need not address those contentions.

stantiated the plaintiff's allegations and notwithstanding the fact that the irregularities charged affected the outcome of the election the Defendant Secretary refuses to file suit to set aside the election."[13] Thus the Court of Appeals' opinion impermissibly authorizes the District Court to allow respondent the full trappings of an adversary trial of his challenge to the factual basis for the Secretary's decision.

## IV

The District Court, pursuant to the Court of Appeals' order of remand, ordered the Secretary to furnish a statement of reasons. The petitioner did not cross-petition from the order, and petitioner and USWA conceded that the order was proper in this case. Tr. of Oral Arg. 23–24, 52. The Secretary furnished the statement and it is attached as an Appendix to this opinion. Its adequacy to support a conclusion whether the Secretary's decision was rationally based or was arbitrary and capricious, is a matter of initial determination by the District Court.

The judgment of the Court of Appeals is reversed insofar as it directs further proceedings consistent with the opinion of the Court of Appeals, and that court is directed to enter a new order that the proceedings on remand be consistent with this opinion of this Court.

*So ordered.*

---

[13] The Secretary concedes that, because the District Court dismissed respondent's complaint for want of "jurisdiction," all of the factual allegations of this paragraph must be accepted as true. Brief for Petitioner 4 n. 2. The allegation recites, however, only that the "Secretary's investigation has substantiated the plaintiff's allegations," and not also that the Secretary has found that the irregularities charged affected the outcome of the election. On the contrary, the reasons statement attached as the Appendix to this opinion discloses that the Secretary found that the irregularities did not affect the conduct of the election.