Hector MALDONADO, et al., Plaintiffs,

v.

William E. BROCK, Secretary of Labor, et al., Defendants,

Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, AFL–CIO, Defendant-Intervenor.

No. 86 Civ. 5438 (GLG).

United States District Court, S.D. New York.

June 4, 1987.

Stein, Davidoff & Malito (Richard C. Stein, Paul Gibson, Richard L. Steer, New York City of counsel), for plaintiffs.*

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. (Edward T. Ferguson, III, Asst. U.S. Atty., New York City, of counsel), for defendant William E. Brock, Secretary of Labor.

Eisner & Levy, P.C., New York City and Gladstein Reif & Meginniss, Brooklyn, N.Y. by Richard A. Levy, James Reif, Fanette Pollack, for defendant-intervenor Local 1199.

## OPINION

GOETTEL, District Judge:

Hector Maldonado and three other plaintiffs bring this action on behalf of 800 individual members of Local 1119, Drug, Hospital and Health Care Employees Union, RWDSU, AFL–CIO ("Local 1199"), to set aside a determination by the Secretary of Labor, William Brock ("Secretary"), that Local 1199's April 1986, supervised election was lawfully conducted. The plaintiffs move for injunctive and declaratory relief to remove the current officers, restore the former officers to office, and require a new

---

* The firm of Stein, Davidoff & Malito withdrew as counsel for plaintiffs as of March 6, 1987, after submitting all papers on which this opinion is based. The plaintiffs are now appearing *pro se.*

supervised election. The defendants move to dismiss or for summary judgment.

*Background*

In 1984, Local 1199 held an election of officers, in which the incumbent slate was reelected ("Slate 1"). The election was challenged by some of the losing candidates, who filed a complaint with the Secretary pursuant to section 402(a) of Title IV of the Labor-Management Reporting and Disclosure Act of 1959, as amended ("LMRDA"), 29 U.S.C. § 482(a). The Secretary investigated the complaint and found violations of the LMRDA constituting denial of union members' right to vote, including erasure of voting machine tallies and the alteration and substitution of ballots. The Secretary is authorized, under such circumstances, to bring a civil action in federal court to set aside the union election. The union, however, entered into an administrative settlement with the Secretary dated July 29, 1985, pursuant to which the union agreed to conduct a new election, supervised by the Secretary. *See* 29 U.S.C. § 482(b).

The supervised election was held in April 1986, using the detailed procedures set forth by the Secretary. Since the union has over 75,000 members, voting was conducted over an eight day period at approximately one hundred polling places, all closely supervised by Department of Labor personnel. On May 1, 1986, the Secretary tabulated the votes and certified the results. The tally showed that the "Save Our Union" candidates ("Slate 2") had defeated the Slate 1 incumbents. Over two thousand ballots were challenged. However, since the margin of victory in the closest race exceeded the number of challenged ballots, the challenges did not have to be resolved; those ballots were simply not counted.[1]

Within ten days after this result, union members supporting Slate 1 filed complaints with the Secretary, asserting over 140 allegations of misconduct in the April 1986 election. These allegations were investigated on an expedited basis by a task force assigned by the Secretary. On June 23, 1986, the Secretary issued his determination that the outcome of the April 1986 election was unaffected by any alleged violation of Title IV of the LMRDA. The Secretary declared that the members of Slate 2 were, therefore, the duly elected officers of Local 1199 and should be installed in office no later than June 26, 1986.

The defeated Slate 1 incumbents filed suit to block the installation of the newly elected officers and requested judicial review of the Secretary's determination. *See Local 1199, Drug, Hospital and Health Care Employees Union v. Brock,* 86 Civ. 5016 (GLG). The court declined to enjoin the installation of the Slate 2 officers, noting that, since the Secretary's statement of reasons had not yet been written, the court could not review his determination.[2] *See* Transcript of Argument, June 25, 1986, p. 34, annexed as Exhibit K to Maldonado Affidavit. The Secretary was ordered to furnish his statement of reasons by June 27, 1986. *Id.* at 35. The new officers were installed on June 26, 1986.

On June 27, 1986, the Secretary issued his Statement of Reasons in Support of the Secretary's Determination that the April 15–May 1, 1986 Supervised Election for Officers of Local 1199, Drug, Hospital and Health Care Employees Union Was Conducted in Accordance with Title IV of the LMRDA ("Statement of Reasons"). This document set forth the bases for the Secretary's determination that the outcome of the April 1986 election was unaffected by any alleged violations of Title IV of the LMRDA. The plaintiffs commenced this action on July 10, 1986.

*Discussion*

The scope of judicial review of the Secretary's decision is narrowly limited. As not-

---

**1.** Slate 2 defeated Slate 1 by an average of approximately 3,100 votes. In the closest race, for the union presidency, the margin of victory for the Slate 2 candidate was 2,366. This exceeded the number of challenged ballots, 2,134, by over 200 votes.

**2.** The initial decision regarding injunctive relief was rendered by Judge Lowe, sitting as the emergency, Part I Judge, at a time when I was unavailable for an immediate hearing.

ed by the Supreme Court, Congress gave the Secretary exclusive authority to challenge union elections, including the discretion to determine both probable violations of the LMRDA and the probable effect of any violation on an election. *Dunlop v. Bachowski*, 421 U.S. 560, 569–70, 95 S.Ct. 1851, 1858–59, 44 L.Ed.2d 377 (1975). The underlying rationale for the broad discretion given to the Secretary is to serve the public interest in speedy resolution of disputed union elections by relying on the Secretary's special knowledge and expertise. *Id.* at 568–70, 95 S.Ct. at 1858–59. In order for the court to "intelligently review the Secretary's determination, the Secretary must provide the court ... with ... a statement of reasons supporting his determination." *Id.* at 571, 95 S.Ct. at 1860. Detailed findings of fact are not required. However, the statement should describe the grounds for the decision and the essential facts upon which the Secretary's inferences are based. *Id.* at 573–74, 95 S.Ct. at 1860. The court's review is limited to consideration of the statement and "determination of whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Id.* at 572–73, 95 S.Ct. at 1860. Only in a rare case may the court go beyond the confines of the statement.

■ The plaintiffs contend that this action qualifies as a "rare case," for which extended judicial review, including an evidentiary hearing, is appropriate. We disagree. In *Bachowski*, a "rare case" is described as one in which the Secretary grossly abuses his discretion by, for example, declaring he will not enforce Title IV, or prosecuting complaints in a constitutionally discriminatory manner. *Id.* at 574, 95 S.Ct. at 1861. Despite the plaintiffs' conclusory allegations, we find no basis to believe that such outrageous abuses occurred here.[3] Consequently, we must look only at the Secretary's Statement of Reasons and determine if it is adequate for us to determine whether the Secretary has exercised his discretion in a manner that is neither arbitrary nor capricious.

■ The Secretary's Statement of Reasons is a 24–page document detailing the 140 allegations raised by union members contesting the supervised elections. It notes that the allegations fell into four broad categories.[4] The Statement enumerates the various allegations within each category, explains the steps taken to investigate each, and discusses the reasons for concluding that no violation occurred that may have affected the outcome of the supervised election.[5] The Secretary determined that only one violation had occurred, and that it did not affect the outcome of the election.[6] Even if the violation might have affected the election, it would still be within the Secretary's discretion to decline to take action to set aside the election. *See*

---

3. The plaintiffs allege, for example, that the Secretary abrogated his authority. They also allege that he usurped the union's power and controlled all aspects of the voting process. We find scant support for either assertion. The Secretary closely supervised the 1986 election to avoid the kind of abuse found to have tainted the 1984 election. As for abrogating authority, the Secretary assigned a task force to conduct an intensive five-week investigation into the 140 allegations of irregularity in the supervised election. This is hardly an abrogation of authority.

4. Only three of the four categories are challenged in this suit: (1) alleged use of union and employer funds to support the Slate 2 candidates; (2) alleged bias by Department of Labor personal against Slate 1 and in favor of Slate 2; and (3) alleged irregularities and improprieties both at the polls and in the tallying of the ballots.

5. The Statement of Reasons was further supplemented by an additional statement addressing the specific allegations raised by the plaintiffs in this action. *See* Affidavit of Richard G. Hunsucker, Director of the Office of Elections, Trusteeships and International Union Audits in the Department of Labor.

6. The one violation was a result of cash contributions of approximately $1,100 by a party considered an employer under the LMRDA. As the Statement of Reasons noted, however, "since Save Our Union raised $103,000 from legitimate sources for its campaign, the Department concluded that it could not show that these sums of money may have had an effect on the outcome of the election." Statement of Reasons ¶ 16.

*Dunlop v. Bachowski, supra,* 451 U.S. at 571, 95 S.Ct. at 1859–60. Regardless of any view this Court might take concerning the facts, we may not substitute our judgment for that of the Secretary. *Id.*

■ Not only is the Secretary's determination entitled to great deference, but the election itself, having been supervised by the Secretary, "enjoys a presumption of fairness and regularity." *Donovan v. Blasters, Drillrunners & Miners Union, Local 29,* 521 F.Supp. 595, 598 (S.D.N.Y. 1981). "The challenger of a supervised election carries a heavy burden of persuasion and proof to show that the Secretary's certification was arbitrary, capricious, or otherwise not in accordance with law." *Usery v. Local 639,* 543 F.2d 369, 378 (D.C. Cir.1976). The plaintiffs fail to carry their burden. The Statement of Reasons adequately details the grounds for the Secretary's decision, and is in no way arbitrary, capricious, or contrary to law.

*Conclusion*

Judicial review in this case is limited to an examination of the Secretary's Statement of Reasons not to set aside Local 1199's supervised election. The Statement adequately demonstrates that his decision was not arbitrary, capricious, or contrary to law. Consequently, the plaintiffs' motion for injunctive and declaratory relief is denied. The defendants' motions to dismiss or for summary judgment are granted and the complaint is dismissed in its entirety. The Clerk will enter judgment accordingly.

SO ORDERED.