STATE OF OREGON, on Behalf of the OREGON HEALTH SCIENCES UNIVERSITY, Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary of Health & Human Services; Blue Cross and Blue Shield Association; Blue Cross/Blue Shield of Oregon, Defendants–Appellees.

No. 86–4369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1988.

Decided Aug. 18, 1988.

**5.** Andro, for his part, does not contend that the coercive detention of Olga ended before May 20, 1981.

Christine A. Chute, Asst. Atty. Gen. for the State of Or., Salem, Or. and Mark S. Windisch, Weissburg and Aronson, Inc., Los Angeles, Cal., were on the brief and Margaret M. Manning (argued), Weissburg and Aronson, Inc., Los Angeles, Cal., for plaintiff-appellant.

William J. McIntyre, Asst. Regional Counsel, Office of Gen. Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendants-appellees.

Before HALL and O'SCANNLAIN, Circuit Judges, and KELLER,* District Judge.

O'SCANNLAIN, Circuit Judge:

The Oregon Health Sciences University appeals the district court's refusal to review Blue Cross/Blue Shield of Oregon's decision not to reopen reimbursement claims for services rendered by its University Hospital under the Medicare Act. The district court reached its decision on the grounds that neither agency review nor judicial review was permitted under the Act. We reverse and remand.

## FACTS AND PROCEEDINGS

This dispute involves Oregon Health Sciences University Hospital's ("Hospital") attempt to reopen its Medicare claims for the 1978 and 1979 fiscal years. In both years, the Hospital sent its fiscal intermediary, Blue Cross/Blue Shield of Oregon ("Blue Cross"), an estimate of the worth of the services provided by the faculty of its medical school.[1] Blue Cross then used the estimate to calculate the Hospital's payments. However, the Hospital later discovered that a new method of determining the worth of faculty services would entitle them to more money. To take advantage of this discovery, in 1982 the Hospital requested that Blue Cross reopen the 1978 payment determination so that its claim could be increased. Similarly, in 1983 it asked that Blue Cross reopen the 1979 payment determination.[2] After Blue Cross refused both

---

* The Honorable William D. Keller, United States District Judge for the Central District of California, sitting by designation.

1. Under the Medicare system during this period, hospitals that provided Medicare services ("providers") usually did not receive their payment directly from the government. Instead, the providers received payment through private insurance companies. These companies signed a contract with the Secretary of Health & Human Services that deemed them "fiscal intermediar- ies" responsible for determining the validity of a provider's claims for payment for a given fiscal year (July 1 to June 30).

In 1983 this system of payment was substantially altered. These alterations do not affect the current dispute.

2. A request for reopening can be made for three years following the initial determination. 42 C.F.R. § 405.1885(a) (1988). The Hospital filed each request within this time limit.

requests, the Hospital sought a review of these refusals from the Provider Reimbursement Review Board ("Board"), which reviews fiscal intermediary decisions.[3]

In 1985 the Board denied both requests because it construed the applicable statutes as precluding review of the fiscal intermediary's decision. The Hospital then appealed the Board's denials to the Secretary, who delegates his power to review the Board's decisions to the Administrator of the Health Care Financing Administration. On behalf of the Secretary, the Administrator affirmed both of the Board's decisions. In 1986 the Hospital sought judicial review of the Administrator's denials by filing a complaint in the district court, which granted summary judgment of dismissal for lack of jurisdiction. The Hospital filed a timely appeal to this court.

## DISCUSSION

The Hospital contends that the Board has the power to conduct an administrative review of a fiscal intermediary's refusal to reopen. To evaluate this claim, we must examine whether the Secretary's regulation (42 C.F.R. § 405.1885(c), which governs reopenings) conforms with the statute.

"The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984). Therefore, if the intent of Congress is clear, we, as well as the agency, must give effect to the unambiguously expressed intent of Congress. *Id.* at 842–43, 104 S.Ct. at 2781–82. However, if the "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2781.

"An agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the intent of Congress." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985). However, a reviewing court "must reject administrative constructions of [a] statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Securities Indus. Ass'n v. Board of Governors*, 468 U.S. 137, 143, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (1984) (quoting *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)).

I

## PLAIN MEANING OF THE STATUTE

■ We conclude that the Secretary's interpretation is in conflict with the plain meaning of the statutory mandate. The key section involved here is 42 U.S.C.A. § 1395oo(a) (West 1983). *See Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. ——, 108 S.Ct. 1255, 1258, 99 L.Ed.2d 460 (1988) ("§ 1395oo(a) of the [Medicare] Act addresses the circumstances in which a provider may invoke the Board's jurisdiction"). That statute in relevant part states that:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board ... if—

(1) such provider

(A)(i) is dissatisfied with a final determination of the organization serving as its fiscal intermediary ... as to the amount of total program reimbursement due the provider for the items and services furnished....

---

3. The Board is appointed by the Secretary pursuant to 42 U.S.C.A. § 1395oo(h) (West 1983), two of whose five members are representatives of providers of services. A request for review of an unfavorable determination by a fiscal intermediary must be made within 180 days of the decision. 42 U.S.C.A. § 1395oo(a)(3) (West 1983). The Hospital complied with the time limitation.

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination under paragraph (1)(A)(i). . . .

The plain meaning of section 1395oo(a) entitles the Hospital to Board review. The Hospital (1) sought review because it was dissatisfied with Blue Cross' final determination on reopening; (2) argued that an error of $400,000 occurred; and (3) filed for a hearing within 180 days of Blue Cross' final determination on reopening.

The Secretary's arguments against Board review of reopening are contrary to the statute's plain meaning for several reasons. First, the Secretary reads section 1395oo(a)(3) as requiring a filing for a hearing within 180 days of a notice of program reimbursement ("NPR").[4] This reading is unsupported by the language of the statute. Section 1395oo(a)(3) refers to a "final determination" as the trigger for the 180 day deadline, not the NPR. Although the NPR is often the final determination in question, the fiscal intermediary's refusal to reopen also qualifies as a final determination, a fact the Secretary concedes in his briefs. Second, the Secretary ignores the fact that because reopening decisions directly implicate "the amount of total program reimbursement due the provider for items and services furnished," such decisions are reviewable by virtue of the statutory language in section 1395oo(a)(1)(A)(i).

Third, the Secretary's claim of unreviewability cannot be supported by the plain language of the section of the Medicare Act authorizing reopening procedures. The statutory authorization of reopening mandates that the regulation should "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A)(ii) (1982). Nothing in plain language of this mandate indicates unreviewability.

■ Finally, even the plain language of the Secretary's own regulations, 42 C.F.R. § 405.1885(c) (1988), does not bar review. Section 1885(c) reads: "Jurisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision." The language of section 1885(c) says nothing about reviewability; it merely vests the discretion to decide whether or not to open.[5]

The Secretary's promulgation of section 1885(c) fails to make a fundamental distinction: there is a difference between having the discretion to decide an issue, and allowing review of an administrative body's exercise of its discretion. Thus, even though the Secretary has disqualified the Board by virtue of section 1885(c) from deciding whether or not the fiscal intermediary should reopen, the Board has not been disqualified from deciding whether the fiscal intermediary abused its discretion by refusing to reopen the determination. *See* 5

---

4. A NPR notifies the provider of what costs Medicare will reimburse.

5. The D.C. Circuit has construed section 1885(c) to bar reviewability in *Athens Community Hosp. v. Schweiker*, 743 F.2d 1, 7 (D.C.Cir.1984) ("*Athens II*") and *St. Mary of Nazareth Hosp. Center v. Schweiker*, 741 F.2d 1447, 1449 (D.C.Cir.1984) ("*St. Mary II*"). We decline to follow these interpretations of section 1885(c) for several reasons. First, neither decision provides any reasoning for its conclusion. The *Athens II* court merely asserts that finality is required by 42 C.F.R. § 405.1885(c) (1988). 743 F.2d at 7. The *St. Mary II* court simply adopts the *Athens II* statements on finality with no reasoning. 741 F.2d at 1449. Second, both decisions involve new and unrelated claims; in this case, the

Hospital argues that an error has been made in a claimed expense. *See Athens II*, 743 F.2d at 4 ("It is undisputed that these cost reports did not include requests for reimbursement of certain stock option costs or federal income taxes") and *St. Mary II*, 741 F.2d at 1449 ("St. Vincent, however, was not trying to introduce new evidence, it was trying to make a claim it had not previously presented through its cost report"). Lastly, although in a different context, the Supreme Court recently rejected a restrictive reading of the Board's jurisdiction. *See generally Bethesda Hosp. Ass'n*, 108 S.Ct. at 1255 (the Board has the jurisdiction to consider a provider's appeal which challenges a regulation, even if this claim has not been brought before the fiscal intermediary).

Davis, *Administrative Law Treatise*, (2d ed. 1984) § 28:10, at 311. *See also Dunlop v. Bachowski*, 421 U.S. 560, 571–73, 95 S.Ct. 1851, 1859–61, 44 L.Ed.2d 377 (1975) (allowed review for abuse of discretion, even though courts could not decide the issue in question).

We observe that the Board can easily review for abuse of discretion because there are clear and readily applicable regulations. The relevant reopening regulation provides:

> Whether or not the intermediary will reopen a determination, otherwise final, will depend upon whether new and material evidence has been submitted, or a clear and obvious error was made, or the determination is found to be inconsistent with the law, regulations and rulings, or general instructions....

Medical Intermediary Manual (HIM–13) § 2931.2.

Thus, on the basis of section 2931.2, the Board can decide whether or not the fiscal intermediary abused its discretion because either (1) new and material evidence exists; (2) a clear and obvious error was made; or (3) the determination is found to be inconsistent with the law, regulations, and rules or general constructions.

## II

### FRUSTRATION OF CONGRESSIONAL INTENT

The Secretary's promulgation of section 1885(c) frustrates two clear congressional purposes. First, via section 1395oo(a), Congress intended to give providers a specific means by which to appeal a fiscal intermediary's cost determination. *See* H.R.Rep. No. 231, 92nd Cong., 2d Sess, *reprinted in* 1972 U.S. Code Cong. & Admin. News 4989, 5094. Thus, the Secretary's regulation, at least as the Secretary now wishes to interpret it, partly eviscerates the congressional intent of providing administrative review of a fiscal intermediary's cost determination because his policy would allow questions of mistaken cost determinations to go unreviewed. Second, because the Secretary would shelter the reopening

decision from review, Congress' decision to provide a fair method to make retroactive adjustments is impermissibly negated. *See* 42 U.S.C. § 1395x(v)(1)(A)(ii).

## III

### ELIMINATION OF JUDICIAL REVIEW

■ There is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986). This presumption can only be rebutted if the agency can show that Congress intended to prohibit all judicial review. *Id.* at 673, 106 S.Ct. at 2137; *see also Dunlop*, 421 U.S. at 567, 95 S.Ct. at 1857.

If the Board cannot review the fiscal intermediary's decision, then no judicial review would be available under 42 U.S.C. § 1395oo(f) (1982) (the statute which extends review only to decisions of the Board or the Secretary). Thus, a final agency decision (that of the fiscal intermediary not to reopen) would be immune from review if the Secretary's regulation were to prevail. There is no reason to conclude that Congress intended to prevent review. The statute's language fails to prohibit review; instead, the plain meaning of the statute mandates review. Similarly, the congressional policies argue for review, rather than against it. To the extent that it would prevent judicial review of the Board's action, the Secretary's regulation is invalid.

Since we have decided that the Board has jurisdiction to review the fiscal intermediary's decision not to reopen, we hold that judicial review of decisions by the Secretary or the Board involving reopenings is available pursuant to 42 U.S.C. § 1395oo(f). Of course, such review is limited by "the applicable provisions under Chapter 7 of title 5 [the Administrative Procedure Act]." 42 U.S.C. § 1395oo(f).

### CONCLUSION

We conclude that (1) the Board has jurisdiction to review the fiscal intermediary's decision not to reopen; (2) judicial review

of any Board decision involving reopening exists pursuant to 42 U.S.C. § 1395oo(f); and (3) the scope of judicial review is governed by the Administrative Procedure Act. For these reasons, we reverse and remand to the district court with instructions to remand to the Board for a decision on the merits.

REVERSED and REMANDED with instructions.