TORRUELLA, Circuit Judge
(Concurring).
My colleagues in the majority conclude that they are presently unable to determine whether the Secretary’s actions in this case were unlawful, and that only further clarification from the Secretary will permit proper review. Given this holding, as I understand it, the Secretary now has three options following remand: 1) she may initiate suit; 2) she may decline to initiate suit, acknowledge that she is adopting a new enforcement policy and interpretation of the Act, and provide her reasons for altering her prior policy; or 3) she may decline to initiate suit and attempt to clarify for the court why she believes her decision is consistent with the governing regulations and established past practice.
I fully agree that the Secretary is entitled to pursue either of the first two options. I write separately to express my view that it would be futile for the Secretary to exercise the third option. We need no additional information to correctly conclude that the Secretary’s decision in this case does not square with her established policies and practices. Since the Secretary has provided no reasoned basis for the inconsistency, we should set aside her decision as “arbitrary and capricious” in violation of 5 U.S.C. § 706(2)(A). See Honeywell Int’l, Inc. v. NLRB, 253 F.3d 119, 123 (D.C.Cir.2001) (“Without more, the [agency’s] departure from precedent without a reasoned analysis renders its decision arbitrary and capricious.”).
In 1973, the Secretary enacted a regulation directly governing determinations of whether a labor organization is a “local” or “intermediate” body for purposes of § 401 of the LMRDA. See 38 Fed.Reg. 18,324, 18,326 (July 7, 1973). That regulation, which remains in effect, provides that “[t]he characterization of a particular organizational unit as a ‘local,’ ‘intermediate,’ etc., is determined by its functions and purposes rather than the formal title by which it is known or how it classifies itself.” 29 C.F.R. § 452.11 (emphases sup *62 plied). The Secretary’s past commitment to the regulation’s “functional” — as opposed to merely “structural” — approach is borne out in the only reported decisions addressing the question of whether a union entity is a “local” or “intermediate” body for purposes of Title IV’s election provisions. See Donovan v. Nat’l Transient Div., Int’l Bhd. of Boilermakers, 736 F.2d 618 (10th Cir.1984); Shultz v. Employees’ Fed’n of Humble Oil & Ref Co., No. 69-C-54, 1970 U.S. Dist. LEXIS 12288 (S.D.Tex. Mar. 31,1970).
By contrast, the Secretary’s Statement of Reasons in the present case declares that “[t]here is no basis in the statute or in the legislative history for concluding that if intermediate bodies possess certain functions and powers, they may only elect then-officers directly by secret ballot vote among the members of the intermediate body” (emphases added). Taking this statement as a guiding principle, the Secretary then proceeds to analyze only the structure of the labor organization in question, concluding that the UBC locals “satisfy the definition of ‘local’ in the ordinary sense” in that they are “are clearly subordinate to NERC, which in turn is subordinate to the International.”
I fail to see how further clarification will reconcile the Secretary’s present position (that there is “no basis” for conducting an inquiry of the entity’s “functions and powers”) with the governing regulation (which mandates an inquiry of the “functions and purposes” of the challenged entity).[1] The Secretary has had every opportunity in this litigation to characterize her decision as consistent with past practice, and I presume that she did not hold back her best arguments. Nevertheless, the Secretary’s extended analysis of the case law is unpersuasive, and she makes no attempt to harmonize her decision with 29 C.F.R. § 452.11. If we are not yet convinced that the Secretary has pursued a consistent approach, what more will she reveal in a supplemental statement that is likely to sway us?
To be sure, one can conceive of a Statement of Reasons that is so elliptical or opaque that a reviewing court simply cannot discern the Secretary’s position or rationale. And in such cases, I fully agree that further explanation from the Secretary is warranted. See, e.g., Donovan v. Local 6, Wash. Teachers’ Union, 747 F.2d 711, 719 (D.C.Cir.1984) (mandating a supplemental statement of reasons where the Secretary’s reasons for finding no violation of the Act were “perfunctory and cryptic”). However, this is not such a case. The Secretary has stated her present interpretation of the Act with reasonable clarity, and her present interpretation obviously does not gibe with the readily discernible *63 past policy and practice.[2] Accordingly, we should conclude that her decision must be set aside as arbitrary and capricious. .If, following remand, the Secretary decides not to initiate suit, she should be required to provide a Statement of Reasons that acknowledges her departure from precedent. She should also have to explain her rationale for the decision and explain whether the decision is consistent with both the LMRDA and any governing regulations currently in effect.
Since my view does not command a majority of this panel, I must await, with morbid curiosity, a persuasive clarification of the reasons for the Secretary’s decision that could not be articulated in the original Statement of Reasons, the Secretary’s thirty-one page brief, or the fifteen page submission of the amicus union.

APPENDIX

STATEMENT OF REASONS OF THE SECRETARY OF LABOR

The complainant, Thomas Harrington, a member in good standing of New England Regional Council of Carpenters [Regional Council], United Brotherhood of Carpenters and Joiners, AFL-CIO, filed a timely complaint alleging that the Regional Council fails to elect its officers in compliance with Title IV of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 482, et seq. (the “Act”). For the following reasons, the complaint is dismissed.
The complainant alleges that since the Regional Council assumed functions traditionally performed by the locals of the Carpenters, The Regional Council is now acting as a “local” labor organization and must therefore directly elect its officers to remain in compliance with section 401(b) of the Act, 29 U.S.C. § 481(b). Section 401(b) of the Act states, “Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing.” The Regional Council considers itself an intermediate body, and elects its officers via delegates elected by the members of locals pursuant to section 401(d) of the Act, 29 U.S.C. § 481(d). Section 401(d) states that, “Officers of intermediate bodies, such as general committees, system boards, joint boards, or joint councils, shall be elected not less often than once every four years by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot.”
The Regional Council was created by the United Brotherhood of Carpenters and Joiners International on July 1, 1996. The *64 bylaws of the Regional Council do appear to invest it with some of the powers and functions the locals traditionally possessed. However, the Department is unable to conclude that for this reason the Regional Council is no longer an intermediate body entitled to elect its officers in accordance with either of the two choices prescribed by Congress for intermediate bodies in section 401(d) of the Act.
Congress’ purpose in ordering unions to conduct free and fair periodic elections was “to insure that the officials who wield [power] are responsive to the desires of the men and women whom they represent”. S.Rep. No. 187, 86th Cong., 1st Sess. 19-20. In section 401(d) of the Act, Congress indicated that with respect to intermediate bodies the above purpose could be achieved either directly by a secret ballot vote among all of the members of the intermediate body or indirectly by delegates who themselves were elected directly by secret ballot vote among all the members they represent. Furthermore, that same report indicates that Congress recognized that intermediate bodies had varying degrees of governing power. It states, “The bill recognizes that in some unions intermediate bodies exercise responsible governing power and specifies that the members of such bodies as systems boards in the railroad industry be elected by secret ballot of the members of the union or union officers elected by the members by a secret ballot.” Id. (emphasis added). Thus, Congress understood that intermediate bodies could exercise “governing power” and still be permitted to elect officers via delegate as long as these delegates were selected by secret ballot. There is no basis in the statute or in the legislative history for concluding that if intermediate bodies possess certain functions and powers, they may only elect their officers directly by secret ballot, vote among the members of the intermediate body.
Further, the Department’s investigation disclosed no evidence that would provide a basis for concluding that the Regional Council is now a “local” labor organization. The available evidence indicates that the locals that comprise the Regional Council have not been dissolved or absorbed by the Regional Council so as to be mere administrative arms of the Council, but rather appear to continue to function as separate labor organizations under the Act. From the evidence obtained from the Department’s investigation, the locals subordinate to the Regional Council satisfy the definition of “local” in the ordinary sense. All of the locals of the Carpenter’s New England region are clearly subordinate to the Regional Council, which in turn is subordinate to the International. These locals are independently chartered, have identifiable memberships, elect their own officers, and have their own bylaws. The locals are parties to collective bargaining agreements, and although the Regional Council negotiates these agreements, the locals have the authority to ratify them. The New England Carpenter locals hold meetings periodically where the membership is informed of union activities and business. Each local has its own budget and manages its own bank accounts. Collection of membership dues is performed at the local level. First level grievances are administered by stewards at the local level. Based upon these facts, we are unable to conclude that the locals of the New England Regional Council are so depleted of power and function that they no longer constitute “local” labor organizations under the LMRDA. There is no violation.
It is concluded from the analysis set forth above that the investigation failed to disclose any violation of the Act upon *65 which the Secretary of Labor may bring an action under Section 402 of the Act, 29 U.S.C. § 482, to set aside the election. Accordingly, we are closing our file on this matter.

. One might argue that the Secretary’s present statement can be reconciled with the regulation because it purports only to find no basis for a functional inquiry in the statute and legislative history, while not, specifically, saying that no such basis exists in the regulations. An argument of this sort would, however, be disingenuous. Any valid administrative regulation must have some basis in the language of a statute. That is, a valid regulation must, at the very least, provide a reasonable interpretation of an otherwise ambiguous statutory provision. Becker v. Fed. Election Comm’n, 230 F.3d 381, 390 (1st Cir.2000), cert. denied, 532 U.S. 1007, 121 S.Ct. 1733, 149 L.Ed.2d 658 (2001). If it is accurate that there is truly no basis in the Act for conducting a functional inquiry, as the Secretary contends, we likely would be compelled to hold the regulation mandating such an inquiry invalid. See id. (“Agency regulations in accord with [Congress’] unambiguously expressed intent are upheld; those that contravene that intent are invalid.”). Thus, the inconsistency remains. Any statement by an agency that is tantamount to a declaration that its own governing regulation is invalid would, surely, require acknowledgment and explanation.

. I also believe that, in a laudable effort to accord deference to an administrative agency, the majority opinion unintentionally threatens to impose a heightened and wholly unnecessary administrative burden on the Department. As the Statement of Reasons in the Appendix should indicate, these are relatively informal documents. While they are intended to aid courts in reviewing agency action, they are also intended to be read and understood by the complaining union members. Dunlop v. Bachowski, 421 U.S. 560, 572, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). For this reason, we are entitled only to a simple statement that ”inform[s] the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary’s inferences are based.” Id. at 573-74, 95 S.Ct. 1851. If we require the Secretary to provide a Statement of Reasons that goes beyond even the appellate-caliber briefing that we already have, the likely result will be that the Secretary's responses become less accessible to the lay complainant. Worse yet, the administrative resources necessary to generate such an extensive legal analysis for each decision not to sue will likely distract the Department from processing the complaints of union members in a timely fashion.