Roger WOOD, Plaintiff,

v.

Alexis M. HERMAN, et al., Defendants.

No. CIV. A. 98–2364 ESH.

United States District Court,
District of Columbia.

June 23, 2000.

**44**

James R. Klimaski, Law Offices of Klimaski, P.C., Joanne Royce, Government Accountability Project, Washington, DC, for Plaintiff.

Alexander D. Shoaibi, Assistant United States Attorney, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

HUVELLE, District Judge.

Before the Court are defendants' motion to dismiss, or in the alternative, for summary judgment, and plaintiff Wood's cross motion for summary judgment. Having considered the motions, the oppositions, the replies and the entire record herein, the Court grants defendants' motion and dismisses plaintiff's complaint with prejudice on the grounds that the Secretary of Labor's decision not to bring an enforcement action under § 11(c) of the Occupational Safety and Health Act is not reviewable by the court but is committed to the agency's discretion.

## BACKGROUND

Plaintiff Roger Wood appeals the decision of the Department of Labor (DoL) declining to file a complaint on his behalf for retaliatory discharge under § 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c). Wood was formerly employed as an electrician by a subsidiary of Raytheon at Johnston Atoll Chemical Agent System ("JACADS"), a chemical weapons incinerator which was located on Johnston Atoll in the Pacific Ocean and was being used to destroy a lethal chemical weapons stockpile.

Plaintiff began working at the incinerator on June 18, 1990, and he frequently complained about safety conditions at JACADS. On February 4, 1991, after repeated reprimands, plaintiff refused an assignment to work in a toxic area because Raytheon did not provide him with new corrective lenses for the facepiece of his protective mask. As a result, plaintiff was discharged. Plaintiff claims that the difference between the old prescription and the new prescriptions for the corrective lenses was significant, while Raytheon and the Secretary claim that it was minor. Plaintiff asserts that the discharge was in retaliation for his reporting safety violations and refusing to work under unsafe conditions. On February 15, 1991, plaintiff filed a § 11(c) complaint with the Occupational Safety and Health Administration (OSHA).

OSHA 11(c) Investigator John Braeutigam investigated plaintiff's complaint, and OSHA's San Francisco Area Office made a preliminary determination that plaintiff's complaint had merit. In compliance with standard OSHA procedure, the Area Office attempted to settle the case informally, but when this proved unsuccessful, the case was forwarded to the Regional Solicitor of Labor for legal review and possible litigation. After further research, the Secretary determined that the case was inappropriate for litigation and referred the case to the Department of Defense. In February 1996, the case was returned to OSHA, and in April 1996 National OSHA and the Solicitor's Office reviewed the case again. In a letter dated May 3, 1996, the Assistant Secretary for OSHA notified Wood that OSHA would take no further action because the right to refuse to work is very limited and plaintiff's refusal did not meet the applicable legal test. Furthermore, the Secretary explained that OSHA may not have authority in this area since the hazardous workplace in question was un-

der the control of the Department of the Army, and Raytheon could therefore have a legal defense that would "further complicate the litigation of this matter."[1] AR Doc. A.

Wood seeks a declaratory judgment that DoL's decision declining to bring suit pursuant to § 11(c) on his behalf was arbitrary and capricious. In response, the DoL and the Secretary of Labor have filed a motion to dismiss or, in the alternative, for summary judgment, arguing that the Secretary's decision to decline to file a § 11(c) OSHA suit is not judicially reviewable. Alternatively, the government argues that the Secretary's decision not to bring suit was reasonable under the facts and the law. Given the Court's conclusion that the Secretary's declination to bring an enforcement action is not reviewable, it need not address defendant's alternative argument.

### LEGAL ANALYSIS

#### A. *The Reviewability of the Secretary's Non-enforcement Decision*

 The Administrative Procedure Act ("APA") provides that there is a presumption of reviewability of administrative decisions unless the decision falls within one of two exceptions. The first exception is where Congress has expressly precluded judicial review by statute. 5 U.S.C. § 701(a)(1). The second exception, the focus of this case, occurs when the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In the seminal case relating to judicial review of enforcement actions, *Heckler v. Chaney*,

470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court ruled that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Id.* at 831, 105 S.Ct. 1649.[2] In *Chaney*, prison inmates who had been sentenced to death petitioned the Food and Drug Administration, alleging that the use of certain drugs for lethal injection violated the Food, Drug and Cosmetic Act (FDCA). The prison inmates further requested that the FDA take enforcement action in light of these violations, but the FDA refused. In finding this non-enforcement decision by the FDA to be unreviewable, the Supreme Court explained:

> [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

470 U.S. at 831, 105 S.Ct. 1649. Based on these policy concerns,[3] the Court found

---

1. The Secretary's reference to OSHA's lack of authority arises from the current uncertainty in the law regarding the Secretary's ability to enforce § 11(c) in facilities where the working conditions are subject to the control of another federal agency. In the only case to address the issue directly, *Donovan v. Texaco, Inc.*, 720 F.2d 825 (5th Cir.1983), the Fifth Circuit ruled that OSHA did not have enforcement authority under § 11(c) of seamen serving on vessels that were under the regulatory control of the Coast Guard.

2. *See also Kixmiller v. Securities and Exchange Commission*, 492 F.2d 641, 645 (D.C.Cir.1974) ("an agency's decision to refrain from an investigation or an enforcement action is generally unreviewable...").

3. The Court also noted that a refusal to act does not generally involve the exercise of an agency's "coercive power over an individual's liberty or property rights and thus does infringe upon areas that courts often are called upon to protect," and it further analogized the enforcement decision to a prosecutor's

that an agency's decision to refuse to bring an enforcement action is unsuitable for review, and therefore, it "should be presumed immune from judicial review under § 701(a)(2)," unless the statute "has provided guidelines for the agency to·follow in exercising its enforcement powers." *Id.* at 832–33, 105 S.Ct. 1649. Applying this test to the FDCA, the Court found no "law to apply," for there were no "meaningful standards for defining the limits of . . . [agency enforcement] discretion." *Id.* at 834, 105 S.Ct. 1649. It thus concluded that the FDA's decision not to institute enforcement proceedings was "committed to agency discretion by law" within the meaning of the APA, *id.* 834–35, 105 S.Ct. 1649, and it left "to Congress, and not to the courts, the decision as to whether an agency's refusal to institute proceedings should be judicially reviewable." *Id.* at 838, 105 S.Ct. 1649.

*Chaney* has been consistently followed by all circuit courts which have addressed the issue of judicial reviewability of agency enforcement decisions. For instance, in *Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949 (3rd Cir.1987), the Third Circuit found that the Secretary's non-enforcement decision under Section 404 of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1344 (1982), was within the Secretary's discretion. Section 404 of the statute provided:

> Whenever on the basis of any information available to him the Secretary finds that any person is in violation . . . the Secretary *shall* issue an order requiring such person to comply.

33 U.S.C. § 1344(s)(1) (emphasis added). The court began its analysis with the presumption that a Secretary's decision not to enforce compliance is unreviewable and that the only way to rebut this presumption is to show that the statute has provided adequate guidelines for review. 815 F.2d at 952. The Third Circuit, finding

decision not to indict—"a decision which has long been regarded as the special province of

"no guidelines for the Secretary to follow in deciding whether to initiate enforcement activity," concluded that the Secretary's decision is committed exclusively to his discretion. *Id.* at 953.

Similarly, in *Dubois v. Thomas*, the Eighth Circuit found that the Administrator's enforcement decision under § 309(a)(3) of the FWPCA was discretionary. 820 F.2d 943, 946–7 (8th Cir.1987). In *Dubois*, the Eighth Circuit examined § 309(a)(3) of the FWPCA, which states:

> Whenever on the basis of any information available to him, the Administrator finds that any person is in violation of section 1311 . . . he *shall* issue an order requiring such person to comply with such section.

33 U.S.C. § 1319(a)(3) (emphasis added). Although the Eighth Circuit found the statutory language to be ambiguous, it nonetheless reached the "inescapable [conclusion] that the duties imposed by the statute must be reviewed as discretionary," 820 F.2d at 946–47, based on the principle that an agency's interpretation of a statute which it administers is entitled to a high degree of judicial deference where neither the language of the statute nor its legislative history evinces a clear legislative intent. *Id.* at 948–49, 950.

■ In the instant case, Section 11(c) of OSHA states:

> the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action.

29 U.S.C. § 660(c)(2). Applying the reasoning set forth in *Chaney* and its progeny, this Court is unable to discern any meaningful guidelines for the Secretary to follow in deciding whether to bring an enforcement action. The Court therefore has no standards to apply to determine if

the Executive Branch, . . ." *Id.* at 832.

the Secretary has abused her discretion. In the absence of such standards, the *Chaney* presumption of nonreviewability must govern, and as discussed below, plaintiff cannot overcome this presumption.

In an attempt to avoid the holding of *Chaney*, plaintiff relies on *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), which predated *Chaney* and is the only case cited by plaintiff where an agency enforcement decision has been reviewed. In *Dunlop*, the Court found that a non-enforcement decision by the Secretary under the Labor–Management Reporting and Disclosure Act ("LMRDA") was subject to judicial review. The statutory language at issue provided:

> The Secretary shall investigate such complaint and, if he finds *probable cause* to believe that a violation of this subchapter has occurred and has not been remedied, he shall within sixty days after the filing of such complaint, bring a civil action.

28 U.S.C. § 482(b) (emphasis added). As explained by the Court in *Chaney*, the statutory language in *Dunlop* "supplied sufficient standards to rebut the presumption of unreviewability." *Chaney*, 470 U.S. at 833. In particular, the LMRDA sets forth a specific standard; *i.e.*, probable cause, which the *Chaney* Court considered to be a clearly defined test that was not " 'beyond the judicial capacity to supervise.' " *Id.* at 834, 105 S.Ct. 1649 (citation omitted). In contrast, § 11(c) does not indicate a clear Congressional intent to limit the agency's exercise of enforcement power. Section 11(c) directs the Secretary to investigate "as [s]he deems appropriate" and to bring a civil action if she "determines that the provisions of this subsection have been violated," yet there is no procedure set forth prescribing how the Secretary is to determine if an action should be instituted.

Plaintiff also argues that the use of the word "shall" in § 11(c) demonstrates Congress' intent to limit the Secretary of Labor's discretion. While it is a recognized tenet of statutory construction that the word "shall" is usually a command, *see Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947), this principle has not been applied in cases involving administrative enforcement decisions. For instance, in *City of Seabrook*, the Fifth Circuit acknowledged that "shall" is typically mandatory, but "when duties within the traditional realm of prosecutorial discretion are involved, the courts have not found this maxim controlling." 659 F.2d 1371, 1375 n. 3 (5th Cir.1981). Similarly, the *Chaney* Court refused to afford the word "shall" a mandatory meaning. 470 U.S. at 835, 105 S.Ct. 1649. The statute in *Chaney* states that any person who violates the Act's substantive prohibitions "shall be imprisoned... or fined." *Id.* The Court found no indication that this demonstrated Congress' intention to mandate criminal prosecution of every violator, and thus, it refused to "attribute such a sweeping meaning to the language." *Id.* Relying on *Chaney*, the Eighth Circuit in *Dubois* also found that "shall" is not indicative of a Congressional intent to impose a mandatory duty on the Secretary to bring an enforcement action. 820 F.2d at 948 and cases cited therein

Plaintiff attempts to distinguish these cases by arguing that they did not involve the protection of individual rights, as opposed to the public interest, and at least with respect to *Seabrook* and *Dubois*, the statute at issue provided for a private right of action which is not permitted under § 11(c). However, *Chaney* did not base its holding regarding reviewability on whether the statute's purpose was to protect public rights versus individual rights or whether the statute provided for a private right of action. Rather, the sole issue is whether a court has meaningful standards to apply to the agency's exercise of discretion.

Finally, plaintiff's reliance on the statutory purpose and the agency's regulations provide little support for his efforts to overcome the presumption against review-

ability. While there can be no doubt that the OSH Act was intended to be a strong remedial statute and that employee reporting of violations was an important provision in achieving the goal of worker safety, it is not possible to extrapolate from this purpose a Congressional intent to provide for judicial review of the Secretary's enforcement decisions. On the contrary, § 13 of the OSH Act explicitly provides employees a right to bring an action in United States District Court against the Secretary "[i]f the Secretary arbitrarily and capriciously fails to seek relief under this section ..." 29 U.S.C. § 662(d). This section demonstrates that Congress, if it so desires, knows how to place an express provision in the Act allowing for judicial review. The lack of such a clause in § 11 of the same Act argues against finding such Congressional intent. Nor do the DoL regulations pertaining to § 11(c) provide the requisite standards for judicial review of the agency's action. While these regulations address the question of what constitutes protected activity, they do not establish any guidance for determining whether the Secretary should institute enforcement proceedings.

In sum, the case law makes clear that the holding in *Dunlop* constitutes a narrow, if not unique, exception to the presumption established in *Chaney* that an agency decision to decline enforcement is not reviewable, but is committed to the Secretary's discretion. Plaintiff has failed to overcome this presumption, since Congress has not evidenced a clear intent to subject § 11(c) decisions to judicial review. While the facts presented by the plaintiff may well raise a forceful argument in favor of the institution of a civil action by the agency, authority to review the decision whether to bring such an action has not been granted to the courts.

## CONCLUSION

Based on the foregoing, the Court concludes that the Secretary's decision not to institute enforcement proceedings on plaintiff's behalf is not reviewable, and thus, defendants' motion to dismiss is **GRANTED.**