**Roger WOOD, Appellant,**

v.

**DEPARTMENT OF LABOR and Elaine Chao, Secretary of Labor, Appellees.**

No. 00–5297.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 7, 2001.

Decided Dec. 28, 2001.

Joanne Royce argued the cause for the appellant. James R. Klimaski was on brief.

Beverly M. Russell, Assistant United States Attorney, argued the cause for the appellees. Kenneth L. Wainstein, Acting United States Attorney at the time the brief was filed, R. Craig Lawrence, Assistant United States Attorney, and Ann Rosenthal and John Shortall, Attorneys, United States Department of Labor, were on brief for the appellees.

Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Roger Wood seeks review of the district court's dismissal of his appeal from the decision of the Department of Labor (DOL) declining to file suit on his behalf for retaliatory discharge under section 11(c) of the Occupational Safety and Health Act (Act), 29 U.S.C. § 660(c). The district court held that the DOL's decision not to sue was committed to the agency's discretion by law and thus not subject to judicial review pursuant to the United States Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). In light of the limited issue Wood raises on appeal, we

affirm the district court's dismissal of his complaint but on a different ground.

## I.

Wood was employed as a senior electrician by United Engineers and Constructors (UE&C)[1] at the Johnston Atoll Chemical Agent Disposal System (JACADS).[2] JACADS is a facility consisting of several chemical weapons incinerators located on the Johnston Atoll in the Pacific Ocean. The facility is operated by UE&C pursuant to a U.S. Army contract to dismantle and destroy the lethal chemical weapons stockpile stored on the island. Due to the type of weapon handled at JACADS, the working conditions at the facility are probably as dangerous as any undertaken in the world.

According to his complaint, before working at JACADS, Wood was employed at the Pine Bluff Arsenal in Arkansas, where he gained extensive experience in the field of chemical weapons destruction, making over 1000 "toxic entries"[3] with various levels of protective clothing and respirators. Upon his arrival at JACADS in 1990, Wood discovered that management and many of his co-employees failed to appreciate the dangers associated with the destruction of chemical weapons. In particular, he found basic safety equipment and training, the norm at Pine Bluff, inadequate at JACADS. As a result, Wood began making a number of safety complaints about conditions at the facility. In November 1990, Wood's concerns were confirmed when an investigation conduct-

---

1. UE&C is a subsidiary of Raytheon Industries.

2. On a motion to dismiss, the facts as alleged in the complaint are taken as true and all reasonable inferences therefrom are drawn in the plaintiff's favor. *See Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 411, 106 S.Ct. 1922, 1924, 90 L.Ed.2d 413 (1986).

3. A toxic entry is an entry into an environment where toxic contamination exists. *See* Compl. ¶ 15.

ed by the Occupational Safety and Health Administration (OSHA) resulted in the issuance of a "serious"[4] citation for two violations. The violations included the provision of unapproved respirators, 29 C.F.R. § 1910.134(c), and the standby team's use of improper protective equipment, 29 C.F.R. § 1910.134(e)(3)(iii). Coincident with the citation, OSHA mandated that all toxic entries be discontinued until JACADS complied with a schedule of specific safety precautions.

Subsequently, Wood and his supervisors had a number of clashes regarding safety issues at JACADS. The supervisors saw many of Wood's allegations as scare tactics, intended to frighten his co-workers. The disputes culminated in Wood's refusal to work in a toxic area because UE&C had not provided him with new corrective lenses for the facepiece of his protective mask. Because he had already received a final reprimand for refusal to work,[5] Wood was discharged for insubordination on February 4, 1991.

On February 15, 1991 Wood filed a complaint with OSHA alleging that his discharge violated section 11(c)(2) of the Act, which prohibits reprisals against employees who raise health and safety concerns. *See* 29 U.S.C. § 660(c).[6] OSHA regional investigator John Braeutigam was initially assigned to investigate Wood's allegations and, based on his investigation, the San Francisco Regional OSHA Office concluded that UE&C had violated section 11(c)(2) of the Act by terminating Wood for making safety complaints about the conditions at JACADS. When attempts at settlement proved unsuccessful, the Regional Office forwarded the complaint to the DOL Regional Solicitor with the recommendation that "a case be filed on Wood's behalf." After further research, the Regional Solicitor concluded that the case was inappropriate for litigation due to a possible jurisdictional conflict with the Department of the Army (Army), which, he concluded, was responsible for setting the safety standards at JACADS. As a result, DOL's Office of the Solicitor (DOL Solicitor) referred Wood's claim to the Army. The Army conducted its own investigation and, in February 1996, finally returned the case to DOL without taking any action.

In April 1996 OSHA and the DOL Solicitor reviewed Wood's case again. In a letter dated May 3, 1996 the OSHA Assistant Secretary notified Wood that OSHA would take no further action. Explaining that the right to refuse to work is very limited, the Assistant Secretary concluded that Wood's refusal to participate in toxic entries did not meet the applicable legal test and thus his termination did not violate section 11(c). The Assistant Secretary also suggested that UE&C's probable jurisdictional defense based on the Army's

---

4. "[S]erious" means a "hazard, violation or condition such that there is a substantial probability that death or serious physical harm could result." *See* 29 C.F.R. § 1960.2(v).

5. On February 2, 1991 Wood had received and signed a "FINAL REPRIMAND" letter detailing his refusal to work as directed. The reprimand stated that "any further incidents, in which your actions are interpreted as insubordination ... will result in the immediate termination of your employment at JACADS." JA 123.

6. Section 660(c) has three subsections. Defining "protected activity" under the Act, section 660(c)(1) provides: "No person shall discharge or in any manner discriminate against any employee because ... of the exercise by such employee ... of any right afforded by this chapter." 29 U.S.C. § 660(c)(1). Section 660(c)(2) provides the complaint procedure and describes the prohibited action, *see infra* p. 110, and section 660(c)(3) sets forth the Secretary's notice deadline once a complaint is filed.

authority over JACADS would "further complicate the litigation."

On October 2, 1998 Wood filed the instant action seeking judicial review of the DOL Secretary's decision declining to bring a civil action on his behalf pursuant to section 11(c)(2) of the Act. Count I of his complaint alleged that the Secretary "determined that Raytheon, [Wood's] employer, had violated 29 U.S.C. § 660(c)" and then "unlawfully declined to file suit in an appropriate U.S. district court against Raytheon." Compl. ¶ ¶ 57–58. Counts II and III alternatively charged that the statement of reasons regarding the decision not to sue contained in the Assistant Secretary's May 3, 1996 letter violated the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(a).[7] Defendants DOL and the DOL Secretary moved to dismiss.

On June 23, 2000 the district court dismissed Wood's complaint, concluding that the Secretary's decision declining to bring a section 11(c) suit was not judicially reviewable. *Wood v. Herman,* 104 F.Supp.2d 43, 48 (D.D.C.2000). The district court relied on the holding in *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), in which the Supreme Court declared that an agency decision declining to initiate an enforcement action is generally "presumed immune from judicial review" unless the statute "has provided guidelines for the agency to follow in exercising enforcement powers." *Wood v. Herman,* 104 F.Supp.2d at 45–46 (D.D.C. 2000) (quoting *Chaney,* 470 U.S. at 832–33,

105 S.Ct. at 1656).[8] "[U]nable to discern any meaningful guidelines for the Secretary to follow in deciding whether to bring an enforcement action," the district court held that "the *Chaney* presumption of non-reviewability must govern." *Id.* at 46. Without separately discussing the APA claims, the district court dismissed the entire action. This appeal followed.

## II.

■ On appeal, as he did in the district court, Wood frames the issue as "whether the Secretary of Labor's decision not to bring an enforcement action, despite having found a violation under 29 U.S.C. § 660(c), is reviewable." Appellant's Br. at 2. We review the dismissal of Wood's complaint *de novo. Gilvin v. Fire,* 259 F.3d 749, 756 (D.C.Cir.2001). In deciding a purely legal question, we need not adopt the reasoning relied upon below. *See Eldred v. Reno,* 239 F.3d 372, 374–75 (D.C.Cir.2001). While we affirm the district court's dismissal of Count I, we do so on a different basis from the one used below. We conclude that Count I fails to state a claim on which relief can be granted, Fed.R.Civ.P. 12(b)(6), because the Secretary did *not* determine that Wood's discharge violated section 11(c) of the Act.

In challenging the Secretary's non-enforcement decision, Wood relies principally upon the language of section 11(c)(2). We allow Wood to fall on his statutory "sword." The pertinent language of section 11(c)(2) of the Act provides:

---

**7.** Count II also challenged the Assistant Secretary's additional rationale included in his May 3, 1996 letter that the jurisdictional issue would likely complicate the litigation of Wood's claim. Counts IV, V and VI laid out additional grounds for relief which are not before us on appeal.

**8.** *Chaney* noted that an agency's decision to decline enforcement is "generally committed

to an agency's absolute discretion" and "involves a complicated balancing of a number of factors which are peculiarly within [agency] expertise." 470 U.S. at 831, 105 S.Ct. at 1655 (citations omitted). In addition, "the agency is far better equipped than the courts to deal with the many variables involved in the proper order of its priorities." *Id.* at 831–32, 105 S.Ct. 1649 at 1655–56.

Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may ... file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the *Secretary determines that the provisions of this subsection have been violated,* he shall bring an action in any appropriate United States district court against such person ...

29 U.S.C. § 660(c)(2) (emphasis added). Count I mirrors the statutory language, alleging that the Secretary determined that Wood's employer had violated section 11(c)(2) and then "unlawfully failed to bring an action." In light of the congressional mandate reflected by the "shall" language, Wood argues, the *Chaney* presumption of non-reviewability is inapplicable.

■ Wood's contention is based on the premise that the Secretary's statutory duty to bring suit under section 11(c)(2) arises only if the Secretary first finds a violation. As discussed below, the Secretary made no such determination here and concluded instead that Wood's refusal to work was not protected activity under the Act. Wood appears to view the Secretary's *determination* that the subsection was not violated and the Secretary's *decision* not to bring suit as two sides of the same coin so that he may challenge the latter without regard to the former. As the complaint itself appears to recognize, however, the Secretary's determination that section 11(c)(2) has been violated at all is a requisite precondition to her enforcement decision. Count I alleges "[t]he Secretary conducted an investigation into plaintiff's claim of retaliation; *confirmed its merits*; and *determined that Raytheon,*

plaintiff's employer, *had violated 29 U.S.C. § 660(c)* by terminating plaintiff in retaliation for protected activity." Compl. ¶ 57 (emphasis added). In his Reply Brief, Wood further argues that because the "Secretary of Labor *unquestionably* found a violation of § 11(c)," the DOL "was obligated to file suit on his behalf." Reply Br. at 1 (emphasis added). Although Count I (paragraph 57) of the complaint alleges that the first step of the statutory directive detailed above was met, Wood's complaint also recites the contents of the Assistant Secretary's May 3rd letter, which states in part that "we conclude that your refusal to work does *not* meet the test set forth in [section 11(c)]." Compl. ¶ 50 (emphasis added). *See generally* 5A *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1357, at 319–20 (2d ed.1990). On its face, then, the complaint foretells its own demise. Wood's challenge to the Secretary's decision not to bring suit on his behalf, which forms the basis of Count I, cannot be heard if the Secretary did not first determine that UE&C violated section 11(c)(2).

Section 11(c)(2) designates the Secretary as the official who decides whether and to what extent an investigation is "appropriate" and, based on that investigation, whether the complainant has made out a claim that his employer discriminated against him, by discharge or otherwise, for his protected activity. 29 U.S.C. § 660(c). To demonstrate that the Secretary "unquestionably" found a violation, Wood sweepingly contends that "[e]very single Department of Labor official and attorney who investigated the facts found a strong merit case." Reply Br. at 1. His contention, even if true, is irrelevant. Only the Secretary of Labor is authorized to "determine" whether the "subsection has been violated." The Secretary has delegated to the Assistant Secretary for Occupational Safety and Health "the authority and as-

signed responsibility for administering the safety and health programs and activities of the Department of Labor ... under ... the Occupational Safety and Health Act of 1970." *See Secretary's Order 3–2000*, 65 Fed.Reg. 50017 (August 16, 2000). Using this authority, the Assistant Secretary for Occupational Safety and Health John Deer determined on May 3, 1996 that Wood's refusal to work was *not* protected activity under section 11(c)(2) and therefore UE&C did *not* violate the Act by discharging him. The first step of section 11(c)(2) not having been taken, then, Wood cannot as a matter of law make out a retaliatory discharge claim as set forth in Count I.[9]

For the foregoing reasons, the district court's dismissal of Count I of Wood's complaint is

*Affirmed.*

**9.** In holding that the Secretary's decision not to sue was unreviewable, the district court did not reach Counts II and III, *Wood v. Herman*, 104 F.Supp.2d at 45; on appeal Wood did not raise, in the alternative, an issue on either, and accordingly, Wood has waived any objection to their dismissal. Moreover, the court does not reach the questions whether either the Secretary's determination of a violation *vel non* or her determination upon finding a violation not to file a complaint are subject to judicial review.